## LOMBARD INVESTMENT CO. v. AMERICAN SURETY CO.

(Circuit Court, W. D. Missouri, W. D. January 28, 1895.)

1. EMPLOYER'S INDEMNITY BOND—CONSTRUCTION.

Under a bond given an employer for the term of a year by which a com-pany covenants that, during its continuance, his employé shall faithfully perform his duties, and, at the cessation of said employment, he shall turn over to the employer all money and property, and indemnifies the employer against loss by default of the employé, occurring during the continuance of the bond, and discovered during said continuance, or within six months thereafter, or within six months from the death, dismissal, or retirement from the employer's service of the employé, recovery can be had for no default not discovered within six months after the termination of the year for which the bond was given, notwithstanding the employé there-after continued in the employment, and similar bonds were given from year to year.

2. SAME—ESTOPPEL.

The recital in an employer's indemnity bond that whereas a prior bond between the same parties had expired, and whereas it allowed six months from expiration in which to make claims for losses thereunder, the right of the employer to make such claims within such six months was recognized

by the second bond, notwithstanding any other provisions therein, estops the employer to assert that under the first bond he could recover for claims presented more than six months after its expiration.

Action by the Lombard Investment Company against the American Surety Company on an employer's indemnity bond.

This cause is submitted to the court on an agreed statement of facts, the substance of which is that the defendant company executed to the plaintiff company four indemnifying bonds, for one year each, covering the years from November 1, 1888, to November 1, 1889; from November 1, 1889, to November 1, 1890; from November 1, 1890, to November 1, 1891; and from November 1, 1891, to November 1, 1892. These bonds were to guaranty the plaintiff against loss in consequence of the employment in its service of one Henry W. L. Russell. The said Russell remained continuously in the employment of the plaintiff until the 18th day of June, 1892, when he retired therefrom; but the plaintiff did not discover the fact of loss by reason of the dishonest acts of said Russell until the 20th day of August, 1892. On the retirement of said Russell, as aforesaid, he departed for the City of Mexico, in Old Mexico, from whence plaintiff, after discovering his default, made unsuccessful efforts to bring him back to Kansas City to answer criminally for his defalcation and embezzlement. On the 26th of August, 1892, the plaintiff sent written notice to the local agent of defendant at Kansas City, and the agreed statement of facts shows action taken thereon by the defendant company in recognition of the sufficiency of the notice. On the 19th day of October, 1892, the plaintiff forwarded claim blanks to the defendant, which were received by the defendant in due course of mail. Losses resulted to the plaintiff by reason of the embezzlements of said employé during the existence of the first, second, and third terms of the indemnifying bonds, the last of which losses occurred on the 7th day of March, 1891. No loss occurred under the fourth bond. The essential provisions of said bonds, which give rise to this strife, sufficiently appear in the opinion of the court. This suit was instituted on the 23d day of March, 1893. The petition contains three counts, predicated of losses occurring under the first, second, and third of said bonds, on each of which judgment is asked for the sum of $20,000, the amount covered by said bonds, although the losses claimed to have been sustained by the plaintiff are much in excess of the penal sum of said bonds. For the purposes of this controversy, the amount and the date of said losses are admitted to be true.

Gates & Wallace, for plaintiff.
Warner, Dean, Gibson & McLeod, for defendant.

PHILIPS, District Judge (after stating the facts). The questions presented on the agreed statement of facts for the determination of the court are as to the proper construction of the provisions of the indemnity bonds. In respect of the first bond, it is contended by the plaintiff that the liability of the defendant thereon continued for six months after the final retirement of the employé from the service of the plaintiff, and the discovery of the loss, in 1892. This proposition the defendant controverts, and contends that the period of limitation for the discovery of the default of the employé, under the first bond, was within six months after the 1st day of November, 1889; and, second, that under the terms of the succeeding employment, for the year beginning November 1, 1889, and ending on the 1st day of November, 1890, and so of each succeeding bond, the right of plaintiff to make claim of loss, occurring under its predecessor, was limited to the period of six months after the ending of the pre-

ceding term; and with the further limitation that the liability of the defendant for the acts of the employé, under both bonds, that is, the first and the second, and the second and the third, should not, during said period, exceed the amount of the last guaranty or bond on the employé for whose acts the claim was made.

It is to be conceded to the plaintiff that, if there is any contradiction, uncertainty, or ambiguity in the provisions of the contract of assurance, all reasonable doubts respecting the meaning thereof shall be resolved in favor of the assured, on the rule, applied more particularly in the construction of insurance policies, that an obscure phrase is to be construed against him who could have rendered it unequivocal in framing the conditions, but failed to do so. So that if the whole policy be susceptible of two constructions, one fixing the liability of the assurer and the other exempting him from liability, that construction is to be preferred which fixes the liability of the underwriter. But while this is correct, other well-recognized rules are to be applied to the interpretation of such instruments as to other contracts. Among these recognized canons of construction are that ordinary words and terms shall be given their ordinary and accepted meaning, and that the real intent and meaning of the parties to the contract is to be sought out through the instrument as a whole, so that due effect and operation shall be given to all its parts and provisions, so as, if possible, to make them all harmonious and consistent. As observed by Judge Napton in Webb v. Insurance Co., 14 Mo. 9:

"It is better, where the terms of the contract are plain, and the meaning such as to be understood, that we should follow the plain language and manifest intent, rather than seek out a doubtful interpretation, with a view to reconcile all the clauses to the supposed interests and objects of both parties."

It is of prime importance, in the construction of the provisions of the first bond, to keep in mind the fact that the term of employment covered by the insurance was for "twelve months, ending on the 1st day of November, 1890, at twelve o'clock noon"; so that when the contract speaks of "during the continuance in force of this bond, * * * and discovery during said continuance," and the like, it must be understood, in the absence of express qualifying provisions limiting or extending the ordinary, natural sense, to refer to the term of twelve months between November 1, 1888, and November 1, 1889. The covenant on the part of the obligor is:

"That, during the continuance in force of this bond, the employé shall, from and after the date of this bond, honestly and faithfully perform all the duties devolving upon him in his respective employment, and shall faithfully and truly account for and pay over to the employer all such moneys and valuable securities and other property as he shall receive from time to time for or from or on account of the employer; and that at the cessation of said employment he shall forthwith deliver over to said employer all books, documents, effects, moneys, etc., belonging to the employer, * * * which shall then be, or which then ought to be, in the hands, possession, or custody of the employé; and the company hereby indemnifies the employer against all loss which the employer shall sustain by reason of the default of said employé in the premises, not exceeding the whole sum set opposite the name of the employé."

The term "cessation of his employment" means the end of the term of twelve months, unless sooner ended.   The covenant then proceeds, after the quotation above made, as follows:

"And occurring during the continuance of this bond, and discovered during said continuance, or within six months thereafter, or within six months from the death or dismissal or retirement of the employé from the service of the employer."

—The simple meaning of which is that the assurer shall be responsible for such defaults as may be discovered within the twelve-months term, and, if not so discovered before the 1st day of November, 1889, the end of the term, six months' grace is accorded for the making of such discovery; or if the employé should die or be dismissed, or retire from the service of the employer, before the expiration of the term of twelve months, then within six months from the date of such death, dismissal, or retirement.   Had the conditions and provisions of the bond stopped here, it would give color and force to the contention of plaintiff that this would have been simply a covenant contract, which, under the state statute, would carry the right of action thereon over a period of ten years from the day when the right of action accrued.   Rev. St. Mo. 1889, § 6774.   But the contract contains this further provision:

"As a part of this bond, that no suit or proceeding, at law or in equity, shall be brought to recover any sum hereby assured, unless the same is commenced within one year from the time of the making of any claim on the company."

To make still more apparent the intent and meaning of the contract as to the time within which an action for default thereon might lie, the succeeding paragraph, between lines 80 and 90, imposes certain duties upon the assured to entitle him to a right of action for any default.   This provision is as follows:

"That the company shall be notified in writing, addressed to the president of the company, at its office in the city of New York, of any act or omission on the part of said employé, which may involve a loss for which the company is responsible hereunder, as soon as practicable after the occurrence of such act shall have come to the knowledge of the employer."

The paragraph does not stop at this point, but proceeds as follows:

"That any claim made in respect of this bond on said employé shall be in writing, addressed to the president of the company as aforesaid, as soon as practicable after the discovery of any loss for which the company is responsible hereunder; in case of death, dismissal, or retirement of said employé within six months thereafter; and in all other cases within six months after the expiration of this bond, as aforesaid, or within six months from the death, dismissal, or retirement of said employé."

From all of which it seems clear to my mind that a period of six months is accorded for the discovery of a default, after the expiration of the term of twelve months; and that in case of a default occurring within the term, and the employé shall die, or be dismissed, or voluntarily retire from service during the term of twelve months, notice and claim of loss must be made within six months after the event of death, dismissal, or retirement.   There could be no dismissal or voluntary retirement of the employé save during the con-

tinuance of the term; and the term "in case of death" must be known by its associates, and be interpreted in connection with the words "dismissal or retirement"; and of consequence it means a death occurring during the existence of the twelve-months term, as there could have been neither sense nor meaning in making a provision respecting a death which did not occur during the term. The evident object of this provision was that, in case of death, dismissal, or retirement, which must occur inside of the twelve-months term, the period of the six months in which to make claim of loss should date from that event, and not from the 1st day of November, 1889, the end of the term of service under the contract; and if claim of loss, in case of death, dismissal, or voluntary retirement from service, must be made within six months from the event, the conclusion is irresistible that, where the term of twelve months' service expires by lapse of time, likewise must claim of loss be made within six months thereafter.

Had all of the bonds for the successive years been executed at one and the same time, contemplating and providing for a term of service extending over a period of three or four years, there would be persuasive plausibility in the contention of the learned counsel for the plaintiff that the term "expiration," as employed in the contract, might be construed to refer to any time during the four-years term when the employé retired from such service. But the first contract was a separate and independent contract;—the only one during the twelve months in existence and in force,—and its provisions in the particular under consideration must be construed in respect of the twelve-months term contracted for by the assurer. The paragraph last above referred to concludes with these words:

"And upon the making of any such claim, on account of any employé, this bond shall wholly cease and determine, as regards any liability for any act or omission of such employé committed subsequent to the making of such claim."

This presupposes that a claim of loss might be presented during the running of the year of the term of employment, as there could be no continuance in service, in contemplation of the contract, after the end of the year, without a renewal contract. On the expiration of the term under the first bond, November 1, 1889, the defendant executed to plaintiff a like bond, assuring it against loss for the year ending November 1, 1890. This bond contains, in legal effect, the same recitals and conditions as its predecessor, except in the particulars now to be noted. Within lines 91 to 95 occurs this provision:

"That the company, upon the execution of a stipulated amount of risk or insurance, under the terms of this bond, in behalf of any employé, shall not thereafter be responsible to the employer under any previous insurance of said employé; it being mutually understood that it is the intention of this provision that but one (the last) insurance of the employé shall be in force at one time, unless otherwise provided."

Then follows this clause:

"The schedule hereto annexed is hereby declared to be a part of this bond."

The schedule referred to contains the following recitations:

"Whereas, the schedule bond issued November 1, 1888, by The American Surety Company of New York, in favor of the Lombard Investment Company of Kansas City, Mo., on certain employés therein mentioned and others subsequently bonded and guarantied subject to its provisions, expire November 1, 1889; and whereas, said bond allows six months from said date of expiration in which to make claims for losses thereunder,—the provisions contained in lines 91 to 95 of the bond hereto attached is hereby modified so as to recognize the right of the employer to make claim within six months from the expiration of the bond first mentioned, for any loss occurring thereunder: but with the understanding that the aggregate liability of the said American Surety Company of New York for the acts of any employé, under both the bonds herein mentioned, shall not during said period exceed the amount of the last guaranty or bond upon the employé for whose acts a claim may be made."

This is an express declaration and claim on the part of the assurer as to its understanding of the effect of the provisions of the first bond in respect of the time within which any claim thereunder for loss should be made, to wit, within "six months from said date of expiration," which was November 1, 1889, unless, as we have shown, the period of expiration was earlier brought about by reason of the death, dismissal, or retirement from service of the employé. Therefore, in order to preserve to the assurer the benefit of the provision respecting the six-months time accorded in the first bond, this saving clause was added, qualifying the effect of the words contained within the lines from 91 to 95 in the preceding part of the last-named bond.

When the plaintiff accepted this second bond, with its expressed provision of the limitation intended by the first bond, it thereby recognized and adopted such construction. Aside from the recognized rule, that, in construing a contract, weight will be given to the common understanding of the parties as to its effect, evidenced by their acts and admissions, when the plaintiff accepted from the defendant the second bond, containing the explicit statement that only six months was allowed from the expiration of the first bond, to wit, November 1, 1889, with the further stipulation that the liability of the assurer for any loss occuring under either or both bonds should in no event exceed the sum guaranteed under the bond, which was $20,000, it created an estoppel against any claim based on a longer period of limitation, or for the liability of $40,000, the aggregate of the two bonds. When the second bond was presented, the plaintiff had the right to refuse to accept it, with the recitation contained in the schedule, and to demand a modification thereof. Failing to do so, by accepting the bond he left the assurer during the whole term of its duration relying upon the fact that the plaintiff understood the provision as to the time within which any claim for loss could be presented under the first bond, as stated in said schedule, as also that the extent of defendant's liability under both bonds did not exceed $20,000. Under such circumstances, the just rule of law applies that he who remains silent when he should speak, shall not be heard to speak when he should be silent. No person will be allowed to adopt that part of a contract which is favorable, and reject the rest, to the injury of him from whom he derives the benefit. As no claim was made under the first bond of any loss for more than

three years after its expiration, the court, on the agreed statement of facts, declares the law to be that the plaintiff is not entitled to recover under the first count of the petition. While there is some variation in phraseology in the third bond, it in no essential manner differs from the legal effect of the second bond; and as the last two bonds, covering the terms, respectively, from November 1, 1889, to November 1, 1890, and from November 1, 1890, to November 1, 1891, are in their substantive effect the same, and no claim of loss under either was made prior to August, 1892, the same result must follow, that, under the agreed statement of facts, the court declares the law to be that the plaintiff is not entitled to recover under either the second or third counts of the petition; and the issues are found for the defendant.