THE PEOPLE OF THE STATE OF MISSOURI, to the Use of HUBBARD & MOFFITT COMMISSION COMPANY, v. MANNING W. COCHRANE et al.; UNITED SURETY COMPANY, Appellant.

Division One, April 1, 1915.

1. **WAREHOUSEMAN: Police Regulation.** The business of storing goods for hire embraces the storage of all kinds of personal property, and is public or private, as it may be conducted for the storage of the goods of the general public, or those of

certain persons; and as it necessarily affects the public, its regulation is a proper exercise of the police power, and its supervision and control by the lawmaking bodies has become a part of the jurisprudence of the country.

2. ———: **Liability.** Independent of statutory regulation, a primary obligation assumed by a warehouseman at common law is to return to the holder of his receipt the goods called for by it, upon the payment of charges and its surrender or cancellation. For a breach of that duty an action *ex contractu* arises to the depositor or his assignee; and for a failure to exercise due care to prevent loss or injury to the goods stored (varying in degree according to the nature of the goods and other attending circumstances) the warehouseman is liable in an action *ex delicto.*

3. ———: **Bond: Valid at Common Law.** Whether or not the statutes regulating the inspection of grain stored in a public warehouse and its business are valid, the bond of a surety company executed for a premium, by which it agrees that the warehouseman will "faithfully perform its duty as a public warehouseman, under the laws of Missouri" and "also fully and unreservedly comply with the laws of said State relating . . . to public warehousemen," is a valid and subsisting obligation at common law, and for a breach thereof by the principal, in failing to deliver upon demand grain called for by a receipt issued by him to a depositor not named in the bond, the surety is liable in damages. The bond is not opposed to public policy, but being voluntary and resting on a sufficient consideration is enforcible as a common-law obligation.

4. ———: ———: **Surety for Premium.** A rigid observance of contracts of indemnity made by corporations licensed to engage in that business for profit, is compelled. Such bonds being given for a gainful purpose (a premium paid), their makers do not fall in the category of sureties for accommodation, who are favorites of the law and are exonerated in all cases where a strict construction of their contract does not bring them within its provisions. The statute estops a duly licensed surety company to deny its corporate power to execute an indemnifying bond for profit or to assume liability thereunder.

5. ———: ———: ———: **For the Public.** A warehouseman's bond which by its terms expresses an obligation on the part of a surety company to indemnify the public against any default of its principal in the performance of his duties as a warehouseman (assumed for a premium), is a valid common-law obligation, and is enforcible by the legal holder of its principal's warehouse receipt, who is entitled to sue for a breach of the bond made for his benefit, though not named therein.

6. ———: ———: **Defense Not Pleaded.** In a suit on a warehouseman's bond, the defense that the grain called for by the receipts is in the warehouse or has disappeared by natural shrinkage, is not available unless pleaded.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer,* Judge.

AFFIRMED.

*Ferriss, Zumbalen & Ferriss* for appellant.

(1) So much of the Grain Inspection Law of 1907 (Laws 1907, p. 285) as authorizes the Board of Warehouse Commissioners to establish State inspection and weighing of grain where they see fit, as defines and establishes public warehouses, and as authorizes the inspection of grain not stored in warehouses, is unconstitutional, as being a delegation of legislative power, and therefore is void. Art. 4, sec. 1, Missouri Constitution; Merchants Ex. v. Knott, 212 Mo. 616. Other provisions of said Grain Inspection Law—including sections 7626, 7627, 7628, 7643 and 7653, providing for license, bond, suit, etc.—which are dependent for their meaning and effect upon those sections which are unconstitutional, share the same fate and are likewise void and without effect. 20 Am. & Eng. Ency. Law, p. 570; State ex rel. v. Nast, 209 Mo. 732; Copeland v. St. Joseph, 126 Mo. 417; Kirkwood v. Highlands Co., 94 Mo. App. 645; Riccio v. Hobokin, 69 N. J. L. 649; Redell v. Moores, 63 Neb. 219; Wadworth v. Railroad, 18 Colo. 600; Hanson v. Krehbill, 68 Kan. 670. (2) Section 1 of the Grain Inspection Law of 1907 repealed in express terms practically all of the former law on the subject, i. e., Art. 3, chap. 117, R. S. 1899 (enacted in 1893, *vide,* Laws 1893, p. 180). This repeal was effective even though the remainder of the Law of 1907 was void for constitutional reasons. Hence, in February, 1909, there was no valid law in effect establishing public warehouses, requiring license, bond, etc. Suth-

erland on Statutory Construction (2 Ed.), sec. 245; State ex rel. v. Wardell, 153 Mo. 319; Blankenship v. Frisco, 160 Mo. App. 637; Equitable G. & T. Co. v. Donahoe, 3 Del. 191; Campan v. Detroit, 14 Mich. 276; Childs v. Shower, 18 Iowa, 272. Even if the repealing clause was ineffective (which we deny), the former law, Laws 1893, p. 180 (Sec. 7623 et seq., R. S. 1899) was unconstitutional and void for the same reasons which vitiate the Law of 1907. Even if the repealing clause of the Law of 1893 was ineffective (which we deny), the original Law of 1889 (Sec. 5607 et seq., R. S. 1889) is not applicable because the Exchange Elevator was not a "public warehouse" as defined in said original law. State ex rel. v. Smith, 114 Mo. 180. (3) The bond executed by defendants in purported compliance with a void law and conditioned upon an observance of such law is meaningless and without legal consideration and imposes no obligation. Kirkwood v. Highlands Co., 94 Mo. App. 637; Coburn v. Townsend, 103 Cal. 233; Shaughnessy v. Surety Co., 138 Cal. 543; Lumber Co. v. Bibb, 139 Cal. 192; Montague Co. v. Farmers, 145 Cal. 205; Brookman v. Hamill, 43 N. Y. 554; Poole v. Kermit, 59 N. Y. 554; Canel v. Scott, 17 Ind. 514; Byers v. State, 20 Ind. 47. Such bond cannot be enforced as a common-law obligation; nor were these suits brought on that theory. State v. Walker, 1 Mo. 546; State ex rel. v. Fraser, 165 Mo. 242; Leona S. M. & C. Co. v. Roberts, 62 Tex. 615; State v. Caldwell, 124 Mo. 509; Oklahoma ex rel. v. Woodring, 1 L. R. A. (N. S.) 848. (4) The Grain Inspection Law is penal in character and where the failure to deliver grain is caused by "natural shortage" of the elevator due to cleaning grain, there is no breach of the bond. (5) The evidence that the Exchange Elevator was run by Cochrane Grain Company for their own convenience and to store their own grain should have been admitted. (6). Assuming the Grain Law to be valid— the receipts held by plaintiffs representing grain stored

by Cochrane Grain Company in their own elevator and delivered to plaintiffs simply as security were not issued in compliance with said law and their dishonor constituted no breach of the statutory bond. Bank v. Bank, 89 Minn. 116; Sexton & Abbott v. Graham, 53 Iowa, 195; Adam v. Bank, 2 Fed. 174. Assuming that the Grain Law is void, and viewing the case as a common-law transaction, the so-called pledges to plaintiffs were never completed by delivery of the things pledged, either actually or constructively. Conrad v. Fisher, 37 Mo. App. 352; Bank v. Taylor, 30 L. R. A. (N. S.) 552, 172 Fed. 177; Bank v. Wilder, 34 Minn. 149; Security W. Co. v. Hand, 206 U. S. 415; Bank v. Whitehead, 39 L. R. A. 725.

*Richard A. Jones* and *Leahy, Saunders & Barth* for respondent.

(1) A bond, though voluntary and not authorized by any statute, is good as a common-law bond. All bonds, though voluntary, if they do not contravene public policy nor violate any statute, are valid and binding on the parties to them. United States to use v. Ferguson, 16 Mo. 258; State ex rel. v. Horn, 94 Mo. 162; Henoch v. Chaney, 61 Mo. 129; LaCrosse Lbr. Co. v. Schwartz, 163 Mo. App. 659; State ex rel. v. Williams, 77 Mo. 467; State to use v. Fincke, 66 Mo. App. 238; State ex rel. v. O'Gorman, 75 Mo. 378. (2) Appellant received value for the execution of the bond and the principals in such instrument operated the warehouse described, had grain therein inspected and graded by the State Grain Inspection Department, issued warehouse receipts thereon, had them registered by such department and transferred them for value, all in accord with such act. There is no failure or absence of consideration for the obligation in suit, and even though a portion or all of the act should be declared unconstitutional, this cannot serve to release ap-

pellant from its obligation. Stevens v. Morgan, 67 Neb. 207; Fidelity & Guaranty Co. v. Ettenheimer, 70 Neb. 147; Daniels v. Tearney, 102 U. S. 415. (3) If the whole grain inspection act had been held unconstitutional and it could be assumed that there is no law in Missouri by which one can be required to take out a license to operate a public warehouse, still a bond voluntarily given conditioned that the obligee shall, in connection with the operation of a warehouse to be conducted by him, conform to the provisions of such statute is valid and will be enforced. Railroad v. Voight, 176 U. S. 505. (4) It may be regarded as now settled that a warehouseman having property of his own stored in his warehouse, may issue receipts therefor and pledge the property as collateral security for his own debt by the delivery of such receipts. Millhaeiser v. Gallago Mills, 101 Va. 590; Bank v. Hibbard, 48 Mich. 123; Bank v. Wilder, 34 Minn. 149; Eggers v. Bank, 40 Minn. 182; Bank v. Bank, 89 Minn. 118; Shepardson v. Carey, 29 Wis. 44; Bank v. Burns, 82 Ala. 615; Broadwell v. Hoard, 77 Ill. 305; Easton v. Hodges, 18 Fed. 679; Parshall v. Eggert, 54 N. Y. 18; Bank v. Elevator Co., 9 Kan. App. 144; Colebrooke, Collateral Security, par. 420; State to use v. Robb-Lawrence Co., 17 N. D. 257. In the case of a public warehouse, the right of a proprietor to issue warehouse receipts against his own property contained therein is, in the absence of statutory prohibition, unquestioned, even as against the right of creditors, for the fact that he is acting in the capacity of warehouseman puts a creditor upon inquiry as to the quality of the title under which he holds property contained in such warehouse. Bank v. Wilder, 34 Minn. 155; Broadwell v. Howard, 77 Ill. 305; R. S. 1909, sec. 6687.

## STATEMENT.

The petition in this case alleges in substance that the plaintiff corporation is organized for business pur-

poses in the city of St. Louis; that the defendant Cochrane Grain Company is a co-partnership, and the defendant the United Surety Company is a foreign corporation, licensed to do the business in the State of Missouri of executing contracts of indemnity and bonds and to become surety on such obligations; that on the 26th of February, the Cochrane Company applied to the circuit court of the city of St. Louis for a license to conduct a public elevator for the storage of grain, known as Exchange Elevator, which. application was sustained upon the condition of the execution of said firm of a bond with sufficient surety. The petition alleges that thereupon the said Cochrane Grain Company executed the bond prescribed by the circuit court, which was duly approved on the 26th of February, 1909. Said bond was for the sum of five thousand dollars and conditioned, to-wit:

*Now, therefore, if said licensee shall faithfully perform his or their duties as public warehouseman or warehousemen, under the laws of Missouri,* and pay; satisfy or perform any and all penalties, found by due course of law, for the violation of any clause of the statute of said State relating to the inspection of grain and to public warehousemen, and shall *also* fully and unreservedly *comply* with the laws of said State relating to the inspection of grain *and to public warehousemen*, then this obligation shall be void, but otherwise remain in full force.

Approved in open court this 26th day of February, 1909.

COCHRANE GRAIN CO.,

| | |
|---|---|
| BY MANNING W. COCHRANE, | (Seal) |
| MANNING W. COCHRANE, | (Seal) |
| THOS. COCHRANE, | (Seal) |
| UNITED SURETY CO., | (Seal) |
| G. A. C. CARR, RES. V.-P., | (Seal) |
| JOHN L. MOORE, | (Seal) |
| Res. Asst. Sec. | |

The petition further alleges that the said Cochrane Grain Company has been guilty of a breach of the above bond in this: That in the prosecution of their business as public warehousemen under said license, they made an elevator receipt in due form for 1070 bushels and forty pounds of number 3 White Corn,

thereby acknowledging the receipt of said product and their obligation to deliver upon the due surrender of said receipt; that said receipt in due course of trade was transferred to plaintiff on the 18th of October, 1910, whereby they became entitled to demand the grain represented by it; that plaintiffs have demanded compliance with the terms of said receipt by the surrender to them of the grain called for, which defendants have refused to make, although plaintiffs have tendered the payment of all charges for the storage of the product represented by said receipt, all to the damage of plaintiffs in the sum of $513.95. Wherefore, they prayed judgment for the penalty of said bond to be satisfied upon payment of said sum of $513.95 with interest.

The second count of the petition was based upon a similar receipt and the refusal of the defendant to comply with its terms, to the damage of plaintiffs in the sum of $927.67. Similar allegations as to the liability of defendants are contained in said count, and judgment prayed for the amount of damages therein specified.

Manning W. Cochrane filed a general denial. The United Surety Company filed an answer, admitting that a license was granted to the Cochrane Grain Company, as alleged in the petition, admitting that it signed as surety the bond mentioned and set forth in said petition, and further answered that the license and bond were issued and made to comply with the provisions of the Grain Inspection Law of 1907 (Laws 1907, p. 285); that sections 7623, 7625 and 7630 of said enactment are unconstitutional and void, and all other sections thereof depended on these particular sections and are likewise null and void. Wherefore, at the time said license was issued and said bond was executed, there were no valid statutes in Missouri defining a public warehouse for the storage of grain or authorizing the circuit court to license a warehouse for the storage of

grain for the public or authorizing or requiring a bond
to be given by persons desiring to conduct such grain
elevator; that there were no valid laws or statutes in
force regulating the business or creating any duties of
public warehousemen, or relating to the inspection of
grain, or authorizing suit by any persons holding ele-
vator receipts upon the bond pleaded in the first count.
That for these reasons, the license issued by the cir-
cuit court to said Cochrane Grain Company was void
"granting no rights to said Grain Company not already
possessed by it." Wherefore, the bond signed by the
defendant, the United Surety Company, was without
consideration and void, and imposed no obligation up-
on it. An answer containing similar defenses was filed
by the United Surety Company to the second count
of the petition. Issue was taken by reply.

On the trial it was conceded that the evidence
tended to prove the allegations set forth in plaintiff's
petition. It was further shown that the United Surety
Company signed the bond in question in consideration
of the promise or payment of a premium therefor by
the Cochrane Grain Company. The jury returned a
verdict for the amount of damages claimed in the
second count of plaintiffs' petition. From a judgment
thereon, the defendant Surety Company duly appealed
to this court because of the constitutional questions
raised in the pleadings.

## OPINION.

## I.

BOND, J. (After stating the facts as above.)—A
warehouseman is a person or corporation lawfully en-
gaged in the business of storing goods for hire. The
**Warehousemen:** business is public or private, as it
**Police Regulation.** may be conducted for the storage of
the goods of the general public, or for those of certain

persons. It was a vocation well known, recognized and defined at common law, which also established the rights and duties arising from this form of bailment. It includes the storage of all kinds of personal property—grain, cotton, fruit and other farm products—horses, cattle, hogs and other live stock—goods, and other articles of merchandise—household furniture and effects, as well as valuables kept in safe deposits. The extent and variety of the business, including within its scope the subjects of the chief industry of the people of the State, as well as the common articles of commerce, early evolved the legal principle that the conduct of this business necessarily affected the public and made its regulation a proper exercise of the police power of the State and Federal Government. [Munn v. Illinois, 94 U. S. 113.]

The doctrine that this calling affects the public interests and hence requires wholesome supervision and control by the lawmaking bodies has now become a part of the jurisprudence of the country. Independent of statutory regulation, a primary obligation assumed by a warehouseman at common law, is to return the goods to the holder of his receipt upon the payment of his charges and the surrender or cancellation of any written evidence given by him when the property was placed in his custody. For a breach of this duty an action *ex contractu* accrues to the owner of the goods, or his assignee. The warehouseman also undertakes upon the reception of goods the exercise of ordinary care to preserve them until called for. These terms imply a varying degree of care or diligence dependent upon the nature of the property stored and the exigencies of its proper preservation or any other circumstances attending its custody which would dictate to a prudent person the observance of a degree of care sufficient to prevent loss or injury to the property. For the breach of the duty of due care thus imposed, the warehouseman is liable to an action

*ex delicto.* [Springfield Crystallized Egg Co. v. Springfield I. & R. Co., 259 Mo. 664.]

In order to safeguard the public and to protect the rights of the purchaser, shipper and receiver of the great grain products of the State, the Legislature of Missouri has enacted grain inspection laws designed to secure those ends. In 1907 (Laws 1907, p. 285) the Legislature passed a bill which was *pro tanto* a substitute for certain sections, embodying the grain inspection laws, set forth in the Revision of 1899. Sections 7623, 7625 and 7630 of this act were held in judgment in the case of Merchants Exchange v. Knott, 212 Mo. 616, wherein it was decided that *these particular sections* manifested an effort on the part of the Legislature to delegate its faculty of making laws, and hence were invalid under the provision of the Constitution vesting in the General Assembly the sole power to enact laws. The sections thus disapproved, referred to a power delegated to the Board of Railroad and Warehouse Commissioners to establish State inspection and weighing of grain at such places as they might see fit (7623); that all warehouses used for the storage of grain of different owners situated in territory where the board had located grain inspection "are hereby declared public warehouses" (7625); the inspection and grading of grain in the territory thus established (7630). No other section nor provision of the inspection laws passed in 1907 was discussed or passed upon in the case above cited. Neither did the court consider in that opinion any of the sections or provisions contained in the Revised Statutes of 1899, which were unrepealed by the amendments of 1907. The first clause of the amendatory act specified forty-seven sections of the Revision of 1899 relating to the inspection of grain, and repealed them, and enacted in lieu thereof forty-seven other sections containing the same numerals as those repealed. It is insisted

for appellant that the ruling adverse to the constitutionality of the three above-mentioned sections of the Act of 1907 caused the whole amendatory act to fail, for the reason that its remaining sections depended for their efficacy upon the three sections which were held to be unconstitutional. It is further insisted for appellant that since the first clause of the amendatory Act of 1907 expressly repealed those sections of the Revised Statutes of 1899 for which others were to be substituted, nothing is left on the statute books relating to grain inspection, except such portions or sections of the revision of 1899 as the amendatory Act of 1907 did not purport to repeal, and hence, when appellant's principal, the Cochrane Grain Company, applied to the circuit court for a license to do business as a public warehouse and executed the bond in suit, it sought and obtained a license which was worthless and gave a bond which was without consideration and void. These premises, and the conclusion deduced therefrom, have been argued with completeness in briefs and ably on the oral argument, when the cause was submitted.

In the view we have taken of this case, it is unnecessary to rule upon the contention which involves the conclusion that the State of Missouri is practically without any grain inspection laws on its statute books, and that its people have been left without the protection which is afforded one of the greatest industries in this State by salutary laws on that subject. In excluding this question from our view, we do not wish to be understood as in any way intimating that the decision in Merchants Exchange v. Knott, supra, affords any basis for an inference of the unconstitutionality of any of the sections of the Act of 1907, except the three particular sections mentioned in that opinion. The learned writer of that opinion carefully confined its ruling to three sections only of the act under review, and to that extent only is it authoritative.

## II.

The vital question in this case is whether or not the bond in suit is a valid and enforcible obligation under the principles of the common law. It was executed by appellant for a price paid or promised.' The Surety Company desired a premium, and to gain that, executed the bond in suit. It had no relationship to the business conducted by the Cochrane Grain Company and no connection with its occupation other than for an agreed consideration to indemnify the public against the breach of certain duties imposed upon its principal by law.

**Warehouseman: Bond: Valid at Common Law.**

It entered into that contract without any other coercion than a motive of profit. The italicized conditions of the contract as set out in the statement disclosed an agreement on the part of the signers in substance that the principal will not only comply with the statutory regulations specified in the Act of 1907, but will also comply with the law of Missouri applicable to the calling of a public warehouseman. If no statute had ever been enacted regulating that business, the common-law obligations would still subsist. Hence, if we should concede for the argument *only*, that all statutory provisions on the subject are at an end, still the duty was imposed upon the principal by the nature of his business and his receipt for the goods, to surrender the property upon proper demand, or to show a valid reason for refusal. The fact that the bond in question embodied conditions to comply with the statutory regulations does not prevent the enforcement of other obligations expressed, which, though not prescribed by statute, were the common law duties attached to the business of public warehousemen.

It is a settled principle of law in this State that a voluntary bond not opposed to public policy and resting

on a sufficient consideration is enforcible or binding as a common-law obligation. [Barnes v. Webster, 16 Mo. 258; State ex rel. Jean v. Horn, 94 Mo. 162; Henoch v. Chaney, 61 Mo. 129; LaCrosse Lbr. Co. v. Schwartz, 163 Mo. App. 659; State ex rel. McKown v. Williams, 77 Mo. 463, 467; State to use v. Finke, 66 Mo. App. 238; State ex rel. v. O'Gorman, 75 Mo. l. c. 378.]

In view of the specific provisions in the bond in question which broadened its obligation, so as to cover any failure on the part of the principal to comply with the laws of Missouri, we see no escape from the application of the rule laid down in the above cases.

## III.

Something is said in the briefs and argument about the exclusion of testimony proposed to be offered on the question of whether the grain called for by the receipts sued on was in the warehouse, or whether it had disappeared by natural shrinkage. An examination of the answer does not disclose any defense of that sort. Hence, there was no error in excluding such testimony.

The trend of judicial decision, as well as the object of the statutes, are to compel the rigid observance of contracts of indemnity made by corporations licensed to engage in that business for profit. [R. S. 1909, sec. 1211; Drainage District v. Surety Co., 252 Mo. l. c. 557.] The highest exponent of the public policy of a State is contained in its statutes. The one above cited estops a duly licensed surety company (as appellant) which has executed a bond, as in this case, "to deny its corporate power to execute such instrument, or *assume such liability.*" (Italics ours.) Such suretyships being for a gainful purpose do not logically fall in the category of sureties for accommodation, who are favorites in the administration of the law, and are

·exonerated in all cases, where a *strict* construction of their contract does not bring them within its provisions. [Kuhl v. Chamberlain, 140 Iowa, l. c. 552.]

For the reason that the bond in suit shows on its face terms, involving the assumption of an obligation by the appellant Surety Company, to indemnify the public, against any default of its principal in the performance of its duties as a warehouseman (aside from stipulations to comply with the inspection laws), we think that instrument is a valid common-law obligation and enforceable in this action by the plaintiff, who though not named in the bond, is entitled to sue in the name of the State for the breach of a bond made for its benefit. [Barnes v. Webster, 16 Mo. supra.] The judgment is therefore affirmed. All concur.