LADIES OF THE MODERN MACCABEES *v.* ILLINOIS SURETY CO.

1. PRINCIPAL AND SURETY—FIDELITY INSURANCE—CONSTRUCTION OF CONTRACTS.

A corporate surety for hire, unlike a gratuitous surety, cannot invoke the rule of *strictissimi juris.*

2. INSURANCE—ACTION ON POLICY—NOTICE OF DEFENSE—PLEADING.

A surety on an indemnity bond is not required to give notice in its plea of the defense that action was not brought within the time stipulated in the bond, where the bond, which

is attached to the declaration, on its face indicates such fact.

3. SAME—FIDELITY INSURANCE—LIMITATION OF TIME FOR SUIT—VALIDITY—PUBLIC POLICY.

The provisions of an indemnity bond limiting liability thereon to losses which shall be discovered within six months after the officers, whose defalcations are insured against, cease to occupy their positions and within six months after the expiration of the bond, and requiring suit to be brought within one year after the termination of the bond, are not against public policy, and are valid and enforceable.

4. SAME—FIDELITY INSURANCE—RENEWAL—SEPARATE CONTRACTS.

Where a bond of indemnity contains a renewal provision that the bond may, at the option of the company, be continued for subsequent years, by issuing a certificate of continuation duly signed and attested by its proper officers and with its corporate seal attached, and a new consideration is paid for such continuation, the original bond and its renewal constitute two different contracts.

Error to St. Clair; Tappan, J. Submitted June 7, 1916. (Docket No. 13.) Decided May 31, 1917. Rehearing denied September 28, 1917.

Assumpsit by the Ladies of the Modern Maccabees against the Illinois Surety Company upon an indemnity bond. Judgment for plaintiff. Defendant brings error. Reversed.

*Lincoln Avery*, for appellant.
*John B. McIlwain*, for appellee.

This case was submitted on briefs at the June, 1916, term and was reassigned at the April, 1917, term. Plaintiff is a fraternal beneficiary association, incorporated under the laws of this State. Its subordinate lodges are known as "hives." Each hive has a "finance keeper," whose duty it is to collect assessments and per capita tax from members and remit the same to plaintiff, also to collect and disburse dues for the subordinate "hives." While the sum collected by each

"finance keeper" is not large, in the aggregate many thousands of dollars pass through their hands. In order to insure the payment and accounting of these sums collected by the "finance keepers," the plaintiff applied to and, for an agreed premium, was given a bond by the defendant, a surety company incorporated under the laws of the State of Illinois and authorized to do business in the State of Michigan. The bond was dated December 22, 1910, and by its terms became operative March 1, 1911, and extended to March 1, 1912, with provisions for renewal which we shall presently relate. It indemnified plaintiff and the subordinate "hives" from loss, "which loss shall be discovered within six months after the officer, on account of whom claim may be made, shall cease to occupy his position, and within six months after the expiration of this bond." The eighth clause of the bond is as follows:

"In the event of any suits at law or proceedings in equity, brought to recover any claim under this bond, the same must be instituted within one year after the termination of this bond, or any period to which it may be continued, or within one year after the officer on account of whom loss has been sustained ceases to occupy the office covered by this bond."

The provision with reference to renewal is as follows:

"This bond may be continued for subsequent years at the option of the company, by issuing in favor of the obligee a continuation certificate or certificates duly signed and attested by its authorized officers with its corporate seal attached."

Pursuant to this last-quoted clause, the bond was renewed for a second year. The renewal certificate contains the following:

"This continuation is granted upon the condition that the representations of the employer made to the company at the time said bond was issued, are to be

taken as continuing warranties, and that such of said warranties, as applied to the system of accounting, examinations and audits, as set forth therein, have been strictly adhered to and will be strictly adhered to, and that all examinations and audits therein mentioned have been and will be made, and that the employers know of no reason why the company cannot safely continue its risk on behalf of said employee. It is also conditional on the part of the company that its liability under said bond and this continuation together shall not exceed the amount of said bond."

The plaintiff has auditors, who, among other duties, audit the accounts of the "finance keepers." Many audits were conducted by these officers showing shortages of "finance keepers" of subordinate "hives." Several of these audits covered the period from March 1, 1911, to March 1, 1913, and the auditors who were called as witnesses were unable to state whether the shortages occurred in the period from March 1, 1911, to March 1, 1912, or the period from March 1, 1912, to March 1, 1913, and the court (the case being tried without a jury) was unable to determine from the proofs the exact amount of shortage that occurred in either of the two periods, but found that a portion of such shortage occurred in each period, that the total amount of such shortage was $833.06, which, with interest, amounted to $952.95. He concluded, as matter of law, that inasmuch as the bond by its terms provided for its continuation, and the certificate of continuation provided that all warranties and representation of plaintiff should continue, therefore the bond, as to plaintiff, should be a continuing obligation, and the bond and its renewal did not constitute two obligations, but were to be treated as one. He therefore declined to follow the contention of defendant that plaintiff could not recover for shortages during the period from March 1, 1911, to March 1, 1912, by reason of the fact that the suit was not brought until November 24, 1913, more than a year after the termi-

nation of the first period, and rendered judgment for the total shortage, with interest.

FELLOWS, J. (*after stating the facts*). The defendant's brief is practically devoted to the discussion of the controlling question, and we shall only consider this question: If any defect exists in the pleadings, the circuit court may, in its discretion, cure it by amendment. It must be and is conceded by the defendant that, inasmuch as it is a corporate surety company executing the bond for a money consideration and engaged in such business for profit, it is not entitled to invoke the rule of *strictissimi juris,* as might be done by a gratuitous surety. *People* v. *Traves,* 188 Mich. 345 (154 N. W. 130); *American Fidelity Co.* v. *State,* 128 Md. 50 (97 Atl. 12); *People* v. *Cochrane,* 264 Mo. 581 (175 S. W. 599); *Standard Salt & Cement Co.* v. *Surety Co.,* 134 Minn. 121 (158 N. W. 802 (and authorities there cited); *Southwestern Surety Ins. Co.* v. *Davis* (Okl.), 156 Pac. 213; *State Agricultural, etc., Society* v. *Taylor,* 104 S. C. 167 (88 S. E. 372); *Young* v. *Bonding Co.,* 228 Pa. 373 (77 Atl. 623). Its business is essentially an insurance against risk and is commonly called, and properly so, "fidelity insurance." The obligation sued upon may more properly be termed a contract of insurance, rather than a bond, as it is called in the record and briefs; but, as the latter term is used throughout the case, we will so style it. All defenses available to gratuitous sureties may not be available in case of corporate sureties for profit, but such defenses as would be available in actions on contracts of insurance are available here.

It will be noted from the statement of facts that the bond (so called) covered the period from March 1, 1911, to March 1, 1912; that the renewal certificate covered the period from March 1, 1912, to March 1,

1913; that the court was unable to determine the shortage in the respective periods; that the suit was not instituted until November 24, 1913, over a year and nine months after the expiration of the first period; that many of the audits did not take place until after March 1, 1913; and that therefore the shortage was not discovered until more than six months after the expiration of the bond. It is insisted by the defendant that this is not a continuing obligation, that the renewal for the second period constituted a separate contract, and that inasmuch as this action was not brought until more than a year after the termination of the first period and the first contract, and the shortages were not discovered until more than a year after the termination of the bond, it must fail as to the shortage occurring during that period; that the amount of such shortage not being determined, or determinable from the record, the judgment must be reversed in its entirety.

The defendant is not insisting upon the statute of limitations; if it were, it would be necessary to give notice under its plea. It is insisting upon a limitation of the period within which suit may be brought, which limitation, if defendant is correct in its contention, appears upon the face of the bond which is made a part of the declaration. It therefore was not necessary for the defendant to give notice of a defense which was patent from the declaration.

The provisions of the bond limiting liability thereon to losses which shall be discovered within six months after the "finance keepers" ceased to occupy their positions and within six months after the expiration of the bond, and requiring suit to be brought within one year after the termination of the bond, are valid and enforceable provisions. *Lyons* v. *Surety Co.*, 243 Mo. 607 (147 S. W. 779); *Granite Bldg. Co.* v. *Saville's Adm'r*, 101 Va. 217 (43 S. E. 351); *Lombard Invest-*

*ment Co.* v. *Surety Co.,* 65 Fed. 476. It is for the interest of the parties to these indemnity contracts, and to the public generally, that defalcations of parties holding positions of trust and confidence should be promptly discovered and stopped, and those guilty of such defalcations promptly dealt with. Provisions tending to bring about such results are not against public policy, but are valid and enforceable.

Do the bond and renewal constitute one contract? If so, this judgment should be affirmed; if not, it should be reversed. We think this question is foreclosed in this jurisdiction. In the early case of *Brady* v. *Insurance Co.,* 11 Mich. 425, this court had under consideration a policy of insurance which provided for renewals in the following language: "This insurance may be continued for such further time as shall be agreed upon"—to all legal intents and purposes of substantially the same effect as is found in the bond in the instant case; the policy was renewed from year to year for several years. The question before this court was whether such renewals constituted a new contract. This court said:

"We have no doubt that each renewal of the policy was a new contract. Each was upon a new consideration, and was optional with both parties. At the expiration of the year over which the original policy extended, the obligation of the insurer was ended, and it was only by the concurrence of the will of both parties that the obligation could be continued. This concurrence is manifested by the payment of a consideration by the one party, and a renewed promise by the other; and an obligation revived or continued under such circumstances, is an original obligation. It must be asked for by the one, and may be assumed or refused by the other; and the policy, which is its evidence, is therefore only continued by the positive act of both parties. This is according to the terms of the policy, and of the certificate of renewal; and the fact that the insurance company, by the very terms of the certificate of re-

newal, required payment therefor, and that such certificate should be countersigned by the resident agent before it should become operative, shows that the company regard the renewal as a new contract, made at their option, and dependent in some degree upon the judgment and knowledge of such agent. Thus, if the agent should find the property depreciated in value, or the risk increased from any cause, he could refuse to countersign the renewal receipt, and the promise by the company to renew the policy would be thereby terminated. Now, it is very clear that all such contracts must be mutual, and that where a right is reserved to a party to renew or dissolve an obligation, the determination of such party to renew an expired contract, if accepted by the other, makes an original contract."

In accord with this holding will be found: *De Jernette* v. *Fidelity & Casualty Co.*, 98 Ky. 558 (33 S. W. 828); Frost on Guaranty Insurance (2d Ed.), § 40. Not in accord with it will be found: *First Nat. Bank* v. *Fidelity & Guaranty Co.*, 110 Tenn. 10 (75 S. W. 1076, 100 Am. St. Rep. 765); *American Bonding Co.* v. *Morrow*, 80 Ark. 49 (96 S. W. 613, 117 Am. St. Rep. 72); 14 R. C. L. p. 1320.

Unless we are prepared to overrule this case the defendant's contention must be sustained and the case reversed. We do not feel called upon to overrule this case. Not only has it stood without question, as the law of this State, for over 50 years, but its reasoning is forceful and appeals to us as announcing sound rules of law. Only by a meeting of the minds of the parties is a contract effectuated. Under the stipulations of the bond in the instant case, the renewal did not automatically take place. The plaintiff had to apply for, and the defendant accept, a continuance of the obligation. Neither could compel action on the part of the other. When the plaintiff applied for, and the defendant accepted, the application, both parties became bound for a new term. It was a new con-

tract; its conditions were the same as the original bond, but it covered a new period, was for a new consideration, and sprang into existence by the affirmative action of both parties.

Construing the original bond and its renewal as two contracts, as we must under the authority of the *Brady Case,* we are bound to construe clause 8 of the bond, quoted in the statement of facts, as requiring that the action brought for defalcations during the life of the bond shall be brought within one year from the termination of bond, and that actions for defalcations, during the continuance of the bond, shall be brought within one year from the termination of the term or period of such renewal or continuance during which they occurred. No other construction can be indulged in if the renewal constitutes a new contract, of which we entertain no doubt.

There is some testimony in the record which tends to show that the parties negotiated with reference to plaintiff's claim and that defendant agreed to adjust it, and it is said that defendant is estopped from here insisting upon this defense. But the case was not tried in the court below upon the theory of estoppel, and there are no findings of fact which would permit us to dispose of it upon that theory.

Defendant, in the court below, submitted requests for findings of fact and conclusions of law which clearly raised the controlling question. The trial court disposed of the case upon that controlling question and upon an erroneous view of the law.

It follows that the judgment must be reversed, and a new trial granted. Defendant will recover costs of this court.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.