

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

August 11, 1969

Honorable Robert Buntyn
County Attorney
Castro County
Dimmitt, Texas

Opinion No. M-445

Re: Whether a custom
cattle feeding lot is
obligated to furnish
County Tax Assessor
with the names of those
owning cattle with said
lot on January 1st and
the number of such
cattle upon demand of
such Assessor. RQ 485

Dear Mr. Buntyn:

In your recent request for opinion, you raised a question concerning the interpretation to be placed upon certain provisions contained in Article 7243 Vernon's Civil Statutes, which statute reads as follows:

"Any person, co-partnership, association or corporation doing business in this State as a warehouseman or operating or controlling a warehouse or place of storage, shall, upon demand of the tax assessor of the county in which said business is operated or in which property is so stored, on January 1st of each year, furnish to the said tax assessor, a list of the property so stored in such warehouse or place of storage, together with a list of the owners of such property and their residence. The term 'place of storage' as used herein shall also include all cold storage or refrigeration plants wherein goods of any nature are stored. Any person or agent or representative of such copartnership, association, or corporation who shall fail to furnish such list and information as set forth above upon demand by the tax assessor of the county in which such property is located, shall be subject to all the penalties now existing against any person for making a false rendition of property for the purpose of taxation." Acts 3rd C.S. 1923, p. 165.

- 2206 -

The facts giving rise to your request for such opinion are as follows:

> "In January of 1969 the Hon. Kent Birdwell, Tax-Assessor Collector of Castro County, made demand on Dimmitt Feed Yards, Inc., a custom cattle feeding lot situated in Castro County, for a list containing the names of the owners and the number of cattle each owner had located in the Dimmitt Feed Yards, Inc. lot in Castro County as of January 1st, 1969. Dimmitt Feed Yards, Inc., after some discussion, agreed to furnish the names of the owners having cattle placed with them on that date but would not furnish Mr. Birdwell with a list containing the number of cattle placed there with them by each owner on January 1st, 1969."

Specifically, you have asked whether Dimmitt Feed Yards, Inc. is obligated to furnish a list to the Tax-Assessor Collector of Castro County, containing the name of the owners and the number of cattle each owner has placed in such commercial feeding yard as of January 1st of such year upon demand by the Tax-Assessor Collector. You further asked whether or not the penal provisions of Article 7243 would apply in the event the commercial feed lot in question failed to comply with the Tax-Assessor Collector's demand.

In our consideration of this question we are assuming that Dimmitt Feed Yards, Inc. is a commercial feed lot having as its primary function the "finishing out" of cattle for market. We assume that the cattle under the control of this feed lot were placed there by their owners for the primary purpose of having their weight substantially increased and not merely for safekeeping. Although your request did not state such, we understand the customary practice in feed lot operations is that the owner of the cattle compensates the feed lot for the weight added to cattle as opposed to compensating the feed lot for the period of time that the cattle are in the possession of the feed lot.

Whether Article 7243 is applicable to Dimmitt Feed Yards, Inc., thereby making such lot obligated to furnish the list to which you refer, necessarily involves a resolution of the question of whether a commercial feed lot is a "place of storage" as that phrase is used in said statute.

Article 10, Vernon's Civil Statutes, provides that in construing statutes the ordinary meaning of the words thereof shall be applied. Concerning the construction of statutes, the following rules are found in Railroad Commission v. T. & N.O. R.R. Co., 42 S.W.2d 1091 (Tex.Civ.App. 1931 error ref.):

"In construing a statute, the one and paramount rule is to ascertain the intention of the Legislature, which must govern in every instance. [Citations omitted] The intention of the Legislature must be gathered from the language of the statute construed as a whole, giving the words used their common and ordinarily accepted meaning; and, if the words employed are free from ambiguity and doubt, and express plainly, clearly, and distinctly the intent, according to the natural import of the language used, then no occasion arises to look elsewhere. [Citations omitted] It may also be here noted that the statute under construction is not only remedial in its nature, but penal as well, and must be construed with at least a reasonable degree of strictness with respect to including anything beyond the immediate scope and object of the statute, even though within the spirit, and nothing can be added to the act by inference or intendment." [Citations omitted.]

In Webster's New International Dictionary, Second Edition, the word "storage" is defined as being the "act of storing, or state of being stored; specifically, the safekeeping of goods in a warehouse or other depository." Such work defines the word "store" as "that which is stored for future use" and "that which is accumulated, or massed together: a source from which supplies may be drawn;" "continued keeping"; "a place of deposit for goods especially for large quantities; a storehouse; warehouse; magazine." Black's Law Dictionary, Fourth Edition, defines "storage" as the "safekeeping of goods in a warehouse or other depository." Therein the verb "store" is defined as follows: "to keep merchandise for safe custody, to be delivered in the same condition as when received, where the safekeeping is the principal object of deposit, and not the consumption or sale. (citations omitted.)

In common parlance, live animals are not deemed as "stored." State v. Frost, 17 Atl.2d 444 (1941). But see Hubbard & M. Commission v. Cochran, 264 Mo. 581, 175 S.W. 599 (1911), 132 A.L.R. 532.

In Tres Ritos Ranch Co. v. Abbott, 105 P.2d 1070 (N.M.Sup., 1940), the Supreme Court made the following comments concerning the word "storage":

> "It is entirely illogical to contend that cattle can usually be stored like ordinary commodities. Storage connotes a certain degree of permanency and immobility, but grazing, or similar terms that are in use to denote to the manner of harboring cattle, connote transcience."

and

> "While there may be some small amount of diminution when goods are stored, it seems wholly improbable that it may include a material increase in the quantity of goods stored."

The reasoning employed in the above case was adopted in the Texas case of State v. Harper, 188 S.W.2d 400, 403 (Tex.Civ.App. 1945, error ref, and cert. den. 327 U.S. 805).

Applying the foregoing definitions and rules of statutory construction to the phrase "place of storage", as such phrase is used in Article 7243, it is the opinion of this office that a custom cattle feeding lot is not a "place of storage". Therefore, the owner of such lot is not obligated to furnish a county tax assessor the names of those owning cattle with such lot on January 1st of such year and the number of such cattle upon demand by such tax assessor. To hold a custom feeding lot to be a "place of storage" would be to violate the rule announced in Railroad Commission v. T & N.O.R.R. Co., supra, to the effect that statutes that are not only remedial in nature, but penal as well, must be construed with at least a reasonable degree of strictness with respect to including anything beyond the immediate scope and object of the statute, even though within the spirit. Cattle are placed in such lots to be "finished out" and not for safekeeping. The primary purpose of delivering cattle to such lots is to have the cattle's weight increased and not for the cattle to be returned in the same condition as when received. The court's comments in Tres Ritos Ranch Co., supra, very definitely indicate that a custom cattle feeding lot should not be considered a "place of storage."

## SUMMARY

A custom cattle feeding lot is not a
"place of storage" as such phrase is intended
in Article 7243, Vernon's Civil Statutes.
Therefore, Dimmitt Feed Yards, Inc. is not
obligated to furnish the county tax assessor
a list of the names of those owning cattle
located within said lot on January 1st of
each year and the number of such cattle,
upon demand by such assessor.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Louis G. Neumann
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman

John Reeves
Ed Esquivel
Jerry Roberts
Alfred Walker

W. V. Geppert
Staff Legal Assistant

Hawthorne Phillips
Executive Assistant