TIMM v. COMMON COUNCIL OF THE VILLAGE OF CALE-
                DONIA STATION.

1. MUNICIPAL CORPORATIONS — INTOXICATING LIQUORS — REGULA-
   TION—CHARTER POWERS—SALOON LIMITS.
   Where the power to regulate and prescribe the location of sa-
   loons is expressly given to a municipality, an ordinance
   fixing a saloon district is a valid exercise of the power.

2. SAME.
   Charter power to a municipality to "suppress" saloons does
   not authorize an ordinance establishing saloon limits.

3. SAME—ORDINANCES—VALIDITY—PRESUMPTIONS.
   A grave doubt as to the power of a municipality to pass an or-
   dinance should be resolved against the existence of the power
   and the ordinance declared invalid.

4. INTOXICATING LIQUORS—VILLAGES—ORDINANCES—ESTABLISHING
   SALOON LIMITS.
   A village organized under the general village law (chapter 87,
   1 Comp. Laws) has no power to establish saloon limits and
   prohibit the sale of liquors outside such limits.

Certiorari to Kent; Perkins, J    Submitted June 18,
1907.  (Calendar No. 22,285.)   Decided July 15, 1907.

Mandamus by John C. Timm to compel the common
council of the village of Caledonia Station to approve
a liquor bond.    There was an order granting the writ, and
respondent brings certiorari.    Affirmed.

*Carroll & Nichols*, for relator.

*Dunham & Dunham* (*E. J. Adams*, of counsel), for
respondent.

OSTRANDER, J.   The relator, Timm, desires to engage
in the business of selling at retail intoxicating liquors in
the village of Caledonia Station.   He was refused the
privilege, because the place of business designated is out-

side of a saloon district fixed by ordinance. He complains of an attempted abridgment of his right under the general law to engage in the business by an ordinance alleged by him to be void.

The questions presented in argument are: *First*, whether the council of a village organized under the provisions of chapter 87, 1 Comp. Laws, with power to pass ordinances "to suppress saloons for the sale of spirituous and intoxicating liquors," may by ordinance fix a saloon district within the village and prohibit the carrying on of the business at any place outside of the district; *second*, if the power exists, whether the particular ordinance is reasonable.

The village of Caledonia Station has about 500 inhabitants. It has a hotel, which is within the saloon district, in which liquors are sold. It has power "to regulate, license, or suppress" billiard tables, "to suppress" gaming, "to regulate and license" public shows, "to regulate or prohibit" sales of property at auction, "to prohibit and suppress" disorderly houses, "to regulate or prohibit" bathing in rivers, "to regulate or prohibit" the selling and storing of combustibles, and finally, "to adopt such other ordinances and make such other regulations for the safety and good government of the village and the general welfare of its inhabitants as are not inconsistent with the general laws of this State." It will be noticed that the terms "prohibit" and "suppress" are sometimes used in the statute in a manner indicative of the idea that they are not interchangeable or synonymous, and that in respect to some matters there is conferred power to regulate *or* prohibit. Strictly, the word "prohibit" means to forbid or interdict by authority, hinder, debar, prevent; the word "suppress," to subdue, overpower, quell, crush, stamp out. In the matter here presented, the words can have but one and the same meaning. Where the power to regulate and prescribe the location of saloons is expressly given to a municipality, an ordinance fixing a saloon district is a valid exercise of

the power. *Johnson* v. *Bessemer Common Council,* 143 Mich. 313; *Sherlock* v. *Stuart,* 96 Mich. 193 (21 L. R. A. 580). So the power in question here may be exercised to suppress—that is, prohibit—saloons. *Rattenbury* v. *Village of Northville,* 122 Mich. 158; *Post* v. *Village of Sparta,* 58 Mich. 212. That the power to regulate is not power to prohibit has been many times decided (Black on Intoxicating Liquors, § 227, note 56), and it is admitted by counsel for the village that the power to suppress or prohibit is not power to license or regulate. The contention is that power to suppress the business in the village is power to suppress it in a part of the village; that the power to prohibit entirely implies and includes the power to prohibit some—to partly prohibit.

This contention, although apparently plausible, cannot, in my judgment, be maintained. I am satisfied that the legislative intention is to give to villages the option to wholly interdict and prohibit the business within municipal boundaries. If they do not act at all, the business may be carried on in the village under the regulations and the restraints imposed by general laws. There is not an option to both permit and suppress. The village is a legal entity, and the influence of its ordinances is confined to its physical boundaries. Anything less than entire suppression, within these boundaries, is not suppression, is not prohibition of the saloon, but is, in fact, mere regulation and restraint. Significance is to be given to the fact that as to certain subjects the power is given to regulate *or* prohibit, as to others the power to regulate only, and as to saloons the power to suppress. This specific enumeration of powers is indicative of an intention to differentiate, and to withhold the power not enumerated. *State* v. *Fay,* 44 N. J. Law, 476.

It seems to me that counsel for the village impliedly admi these propositions when they concede that the reasonablenes ot the ordinance is for judicial determination. The reasonableness of an ordinance of this village which prohibited all saloons would not be debatable. If the

power to prohibit saloons in the whole village may be exercised by prohibiting them in a part of the village, I can conceive of no legal bounds to its exercise. They may be suppressed in every place, except a single building or a vacant lot, and may be permitted to exist in every place, except in a single locality. If a city possessing no express power to suppress saloons, but having express power to fix a saloon district, does fix such a district, the reasonableness of the ordinance is open to judicial inquiry. The reason for fixing such a district, in any municipality, is a single one. The result of fixing the district is, in all cases, suppression of the traffic in other districts. And partial suppression of saloons, within the meaning of the term which counsel for the village assert to be the statute meaning, may be accomplished in many ways besides the one of fixing a saloon district.

An ordinance imposing a large license fee would probably result in suppressing all saloons in this village. No one will contend that such an ordinance could be sustained as an exercise of the power to suppress saloons.

If it were matter merely of grave doubt whether the power to pass this ordinance exists, the application of the rule that the doubt should be resolved against the existence of the power (McQuillin on Municipal Ordinances, § 48, and note) would operate to avoid the ordinance.

The court below reached a right result, and the order of that court is affirmed.

McALVAY, C. J., and CARPENTER, HOOKER, and MOORE, JJ., concurred.