CAMELOT EXCAVATING COMPANY, INC v ST PAUL FIRE &
MARINE INSURANCE COMPANY

Docket No. 62978. Argued January 10, 1980 (Calendar No. 14).—
Decided February 3, 1981.

Camelot Excavating Company, Inc., brought an action against St.
Paul Fire and Marine Insurance Company, the surety on a
performance bond, to recover on the bond, claiming $18,848 as
the balance due on excavation work which the plaintiff did as a
subcontractor for a private apartment construction project.
Defendant St. Paul Insurance brought a third-party action
against the principal on the performance bond, Priestly Con-
tracting, Inc., the plumbing contractor on the project, and
Darrel G. Priestly and Charles L. Langs. The defendant's
motion for accelerated judgment on a provision of the perfor-
mance bond for a one-year limitation after the date on which
the contractor ceased work, was denied by the Wayne Circuit
Court, Horace W. Gilmore, J., on the grounds that the limita-
tion of the performance bond was ambiguous and that, there-
fore, the general six-year statute of limitations for actions for
breach of contract applied. The Wayne Circuit Court granted
summary judgment for the plaintiff. The Court of Appeals,
Danhof, C.J., and R. M. Maher and D. C. Riley, JJ., reversed,
holding that the one-year limitation provision of the perfor-
mance bond is not ambiguous or unreasonable, and that it
could be enforced against plaintiff (Docket No. 78-1428). Plain-

REFERENCES FOR POINTS IN HEADNOTES
[1] 12 Am Jur 2d, Bonds § 37.
   51 Am Jur 2d, Limitation of Actions §§ 64, 65.
   Validity of contractual time period, shorter than statute of limita-
   tions, for bringing action. 6 ALR3d 1197.
[2] 51 Am Jur 2d, Limitation of Actions §§ 31 et seq., 65.
[3] 51 Am Jur 2d, Limitation of Actions § 391 et seq.
[4, 8] 51 Am Jur 2d, Limitation of Actions §§ 18, 38, 39, 65.
   Agreement of parties as estopping reliance on statute of limitation.
   43 ALR3d 756.
[5] 12 Am Jur 2d, Bonds § 26.
[6] 63 Am Jur 2d, Prohibition § 2.
[7] 51 Am Jur 2d, Limitation of Actions § 18.

tiff appeals. In a unanimous opinion by Justice Moody, the Supreme Court *held:*

1. Absent a statute to the contrary, a private performance bond contract may limit the time for bringing suit where the limitation period is reasonable, even though it is less than that of otherwise applicable statutes of limitation. The "reasonableness" rule requires that the claimant have sufficient opportunity to investigate and file an action, that the time not be so short as to work a practical abrogation of the cause of action, and that the action not be barred before the loss or damage can be ascertained.

2. In this case the primary object of the performance bond was to protect the owner of the apartment project against claims by subcontractors. The plaintiff argues that it should not be restricted by the contractual limitation because it was not a party to the bond and had no actual knowledge of its provisions. The plaintiff, however, is a third-party beneficiary of the contract between the surety and the principal contractor, and any rights it has under the contract are limited by the conditions of the contract. The plaintiff's lack of awareness of the contract cannot circumvent the limitation provision because a reasonable time was provided under the contract to investigate the kinds of claims which would normally arise in such circumstances.

3. The contractual one-year limitation is not void on the grounds of public policy. The contract is a private one, and there is no statutory mandate that performance bonds be provided to protect the claims of private subcontractors for labor and materials. The mechanics' lien statute provides a remedy for the plaintiff, which it failed to invoke and which was not barred by the limitations of the performance bond. There is no violation of public policy or basic unfairness in allowing the enforcement of the shorter contractual period of limitation. The period provided was reasonable. Nor is there a violation of public policy in the fact that the plaintiff failed to discover the performance bond before its limitation ended. The plaintiff had a year from the time Priestly abandoned the project in which to investigate possible bases of recovery. It failed to initiate any action when recovery for its work was possible. With a reasonable amount of diligence within one year from the time the contractor ceased work on the project the plaintiff could have discovered the existence of the performance bond and the fact that the contractor had abandoned the work. A cursory investigation of the facts and minimal

inquiry about legal remedies could have reasonably protected the plaintiff's mechanics' lien or third-party contractual rights.

4. There is no ambiguity in the provision of the performance bond that if the contractual limitation "is prohibited by any law" it is deemed to be amended to equal the minimum period of limitation permitted by law. The term *prohibit* means to forbid or interdict by authority, hinder, debar, or prevent. The statutes of limitation for actions for breach of contract and for general personal actions do not contain any language which would prohibit a shorter period of limitation for private performance bond contracts. In the absence of a contrary public policy or statute in Michigan, there is no application of the disputed language of the performance bond which would amend the contractual period to conform to a prevailing law.

Affirmed.

Justice Levin signed the opinion of the Court, but also wrote separately to emphasize the narrowness of the holding and to express his concern about the development of a rule authorizing contractually shortened periods of limitation.

1. The rationale of the rule allowing parties to contractually shorten statutory periods of limitation is that the shortened period is a bargained-for term of the contract. Allowing such bargained-for terms may in some cases be a useful and proper means of allowing parties to structure their business dealings. In the case of a contract of adhesion, however, where the party ostensibly agreeing to the shortened period has no real alternative, the rationale is inapplicable. The rationale may similarly be inapposite as to the typical third-party beneficiary who neither participates in the bargaining nor receives actual notice of the shortened period. In such situations, the public policy expressed in the statute of limitations should presumptively control. Without the bargained-for element, as a practical matter one of the contracting parties has unilaterally supplanted the period of limitation mandated by the Legislature. It is questionable whether the public policy embodied in the statutory limitation period can be subject to unilateral preemption.

2. This case is distinguishable from others in three ways unique to labor and materials payment bonds and to this kind of third-party beneficiary. First, Camelot is not a typical third-party beneficiary. Subcontractors such as Camelot are made beneficiaries as a means of better protecting the owner; the purpose is not to benefit subcontractors. Second, the period here has been shortened to match the actual risk sought to be covered. The bond is designed to protect the owner from me-

chanics' liens filed by unpaid subcontractors and materialmen. The contractually limited period has been tailored to cover only the period during which such liens may be filed and enforced under state statutes. The shortened period thus limits the bond to the coverage actually needed by the owner, the primary beneficiary. Such congruence between the shortened period and the risk to be covered by the insurance policy would not be present if a comparable term were included in typical home-owners, auto, or life insurance contracts. Third, at least as to this type of insurance contract, the Legislature has indicated that the one-year period may be reasonable by so limiting the time for bringing actions on statutorily required labor and materials payment bonds covering public construction. Again, the congruence between the shortened period and the risk being covered would support the reasonableness of this shortened period.

A contract of adhesion, such as most contracts of insurance, in which the shortened period has not actually been bargained for, or which operates to defeat the claim of an intended beneficiary not involved in the bargaining, will present a different case.

89 Mich App 219; 280 NW2d 491 (1979) affirmed.

## OPINION OF THE COURT

1. LIMITATION OF ACTIONS — SURETYSHIP AND GUARANTEE — PERFOR-MANCE BOND — ACTION ON BOND.

   Absent a statute to the contrary, a private performance bond may limit the time for bringing an action on the bond where the limitation period is reasonable even though it is less than that of otherwise applicable statutes of limitation.

2. LIMITATION OF ACTIONS — SURETYSHIP AND GUARANTEE — PERFOR-MANCE BOND — ACTION ON BOND.

   The "reasonableness" rule of a contractual period of limitation on the time for bringing an action on a private performance bond requires that the claimant have sufficient opportunity to inves-tigate and file an action, that the time not be so short as to work a practical abrogation of the cause of action, and that the action not be barred before the loss or damage can be ascer-tained.

3. LIMITATION OF ACTIONS — SURETYSHIP AND GUARANTEE — PERFOR-MANCE BOND — ACTION ON BOND — THIRD-PARTY BENEFICIARY.

   A plaintiff subcontractor who is a third-party beneficiary of a private performance bond between a surety and a principal

contractor, given to protect the owner of the construction project against labor and materials claims, is restricted by a provision in the bond for a one-year limitation for bringing an action on the bond, and the plaintiff's lack of awareness of the bond cannot circumvent the one-year limitation because a reasonable time was provided under the bond to investigate and file the kinds of claims which would normally arise in such circumstances.

4. LIMITATION OF ACTIONS — SURETYSHIP AND GUARANTEE — PERFOR-MANCE BOND — ACTION ON BOND — PUBLIC POLICY.

There is no violation of public policy or basic unfairness in enforcing against a plaintiff subcontractor, as being a third-party beneficiary of a private performance bond given to protect the owner of the construction project against labor and materials claims, a contractual one-year limitation on the time for bringing an action on the bond, because the one-year time provided is reasonable; nor is there a violation of public policy in the fact that the plaintiff failed to discover the performance bond before the year ended where with a reasonable amount of diligence within the time the principal contractor ceased work on the project the plaintiff could have discovered the existence of the performance bond and the fact that the contractor had abandoned the work, and could have protected its mechanics' lien or third-party contractual rights.

5. LIMITATION OF ACTIONS — SURETYSHIP AND GUARANTEE — PERFOR-MANCE BOND — ACTION ON BOND.

There is no ambiguity in the provision of a private performance bond that if its one-year contractual limitation on the time for bringing an action on the bond "is prohibited by any law" it is deemed to be amended to equal the minimum period of limitation permitted by law; the six-year statutes of limitation for actions for breach of contract and for general personal actions do not contain any language which would prohibit a shorter period of limitation for private performance bonds and there is also no public policy which would invoke the language of the performance bond to amend it to conform to the prevailing law (MCL 600.5807[8], 600.5813; MSA 27A.5807[8], 27A.5813).

6. WORDS AND PHRASES — PROHIBIT.

The word "prohibit" means to forbid or interdict by authority, hinder, debar, or prevent.

CONCURRING OPINION BY LEVIN, J.

7. LIMITATION OF ACTIONS — CONTRACTS — PUBLIC POLICY — THIRD-
PARTY BENEFICIARY.

*The express public policy embodied in the statute of limitations
should presumptively control in the case of contract of adhe-
sion providing for a shorter period of limitation where the
party ostensibly agreeing to the shortened period has no real
alternative and the shortened period has not actually been
bargained for, or where the shortened period operates to defeat
the claim of an intended third-party beneficiary not involved in
the bargaining.*

8. LIMITATION OF ACTIONS — SURETYSHIP AND GUARANTEE — PERFOR-
MANCE BOND — ACTION ON BOND — PUBLIC POLICY.

*The public policy embodied in the statute of limitations is not
violated by enforcing against a plaintiff subcontractor, as a
third-party beneficiary of a private performance bond given to
protect the owner of the construction project against labor and
materials claims, a contractual one-year limitation on the time
for bringing an action on the bond, because subcontractors are
made beneficiaries of the bond to better protect the owner, the
period has been shortened to match the actual risk sought to be
covered, i.e., the statutory time during which mechanics' liens
may be filed and enforced, and the Legislature has indicated
that the one-year period may be reasonable by so limiting
similar actions for public construction contracts (MCL 129.209,
570.1 et seq.; MSA 5.2321[9], 26.281 et seq.).*

*Richard A. Lenter* for plaintiff.

*Stephen M. Landau, P.C.,* for defendant.

BLAIR MOODY, JR., J. Plaintiff Camelot Excavat-
ing Company (hereafter Camelot) brought action
against defendant St. Paul Fire and Marine Insur-
ance Company (hereafter St. Paul) to recover pay-
ment on a labor and materials bond. Camelot was
a subcontractor of third-party defendant Priestly
Contracting, Inc. (hereafter Priestly). Priestly was
named as principal on the bond. Defendant St.
Paul moved for accelerated judgment on the basis
of a one-year period of limitations contained in the

bond contract.[1] Plaintiff Camelot brought a motion for summary judgment under GCR 1963, 117.2(3).[2] Camelot's motion was granted; St. Paul's motion was denied.

St. Paul appealed to the Court of Appeals. The Court reversed on grounds that the one-year limitations period did apply so as to preclude Camelot's third-party claim under the bond. 89 Mich App 219; 280 NW2d 491 (1979). We granted leave to appeal. 406 Mich 1009 (1979).

We must resolve two questions presented by the parties: (1) whether the bond contract negotiated by the principal, Priestly, and surety, St. Paul, to insure claims against labor and material for the benefit of a third party can subject plaintiff Camelot to a limitation period which is shorter than that created by the Legislature; and (2) whether the form of bond used in this state in this case and in other states throughout the United States which makes reference to statutes of limitations within the particular state where it is used is ambiguous.

We hold that neither public policy nor existing

[1] Provision for accelerated judgment is found in GCR 1963, 116.1:

"In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him upon any of the following grounds:

*    *    *

"(5) the claim is barred because of release, payment, prior judgment, statute of limitations, statute of frauds, infancy, or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action."

[2] The provision reads as follows:

"The motion for summary judgment shall state that the moving party is entitled to judgment in his favor because of any 1 of the following grounds:

.    *    *    *

"(3) that except as to the amount of damages there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law."

authority prohibit private contracting parties from including in a labor and materials payment bond a provision which reasonably limits claimants to a period within which to bring suit that is shorter than the applicable state statute of limitations. We further find that the form of contract used in this case is clear on its face. The contractual exception clause to the one-year limitation provision is relevant only where state statutes *prohibit* shorter than statutory limits. Thus, this clause does not apply to preclude the one-year provision in this case. The Court of Appeals is therefore affirmed.

I

On April 8, 1973, defendant Priestly, general plumbing contractor for a private apartment construction project, contracted with defendant St. Paul to obtain a required labor and materials payment bond. The bond provided that St. Paul, as surety, would pay claims made by subcontractors of Priestly, as principal, where the subcontractor had not been paid in full within 90 days of the completion of the subcontractor's work. The bond was primarily intended to protect the owner of the project, Village Homes, Inc., against mechanics' lien claims which might accrue over the course of building construction. Priestly entered into a subcontract with Camelot for certain excavation work. The claims intended to be secured were those of subcontractors such as plaintiff Camelot.

As subcontractor, Camelot completed the excavation work pursuant to its contract with Priestly. The construction proceeded until April, 1974, when defendant Priestly abandoned the project. Priestly gave no notice to Camelot that it was leaving the project. At that time, the balance due for the work Camelot had provided was $18,848.

Camelot brought suit against Priestly and recovered a default judgment for the amount owing. Then, on August 26, 1976, plaintiff separately sued defendant St. Paul on the bond. St. Paul interposed the defense that the contract barred Camelot's suit on the basis of the one-year limitation clause contained in the bond contract.

The learned trial judge held that the qualifying language in regard to prohibition of private limitation periods by the state limitations statute rendered the contract provision ambiguous and therefore rejected the asserted defense against plaintiff's claim. On appeal, the Court of Appeals reversed. It found no ambiguity in that the qualifying provision proscribed a shorter limitation than the statutory period only where *prohibited* by law. The Court of Appeals determined that Michigan's general statutory limitation provision does not prohibit shorter contractual limitations on suits pertaining to private construction bonds. Consequently, the limitation provision was a valid defense to plaintiff's suit.

## II

Absent any statute to the contrary, the general rule followed by most courts has been to uphold provisions in private contracts limiting the time to bring suit where the limitation is reasonable, even though the period specified is less than the applicable statute of limitations. *The Tom Thomas Organization, Inc v Reliance Ins Co,* 396 Mich 588, 592; 242 NW2d 396 (1976). See also *Barza v Metropolitan Life Ins Co,* 281 Mich 532, 538; 275 NW 238 (1937); *Turner v Fidelity & Casualty Co of New York,* 112 Mich 425, 427; 70 NW 898 (1897).

This rule has been held to apply in contracts bonding the performance of building or construc-

tion projects. See *Burlew v Fidelity & Casualty Co
of New York,* 64 F2d 976, 977 (CA 6, 1933), *cert
den* 290 US 686; 54 S Ct 122; 78 L Ed 591 (1933);
*Adams v Standard Accident Ins Co,* 124 Cal App
393; 12 P2d 464 (1932); *Cook v Heinbaugh,* 202
Iowa 1002, 1003-1004; 210 NW 129 (1926); *Lesher v
United States Fidelity & Guaranty Co,* 239 Ill 502,
511; 88 NE 208 (1909); *McGarry v Seiz,* 129 Ga
296, 299; 58 SE 856 (1907); *Ausplund v Aetna
Indemnity Co,* 47 Or 10, 22; 81 P 577 (1905), *reh
den* 47 Or 23; 82 P 12 (1905). See also Anno:
*Validity of contractual time period, shorter than
statute of limitations, for bringing action,* 6 ALR3d
1197; Anno: *Validity of contractual limitation of
time for bringing action,* 121 ALR 758.

The boundaries of what is reasonable under the
general rule require that the claimant have suffi-
cient opportunity to investigate and file an action,
that the time not be so short as to work a practical
abrogation of the right of action, and that the
action not be barred before the loss or damage can
be ascertained. See *Page County v Fidelity &
Deposit Co of Maryland,* 205 Iowa 798; 216 NW
957 (1927); *Cook v Northern Pacific R Co,* 32 ND
340; 155 NW 867 (1915); *Sheard v United States
Fidelity & Guaranty Co,* 58 Wash 29; 107 P 1024
(1910), *reh den* 58 Wash 37; 109 P 276 (1910).

In the instant case, the bond secured claims for
labor and materials brought by subcontractors in
plaintiff Camelot's position. However, the primary
object of the bond contract was to protect the
owner, Village Homes, Inc., against such claims:

"The purpose and only purpose of a labor and materi-
als payment bond is to protect the owner against the
claims of those who furnish labor and materials to the
contractor because, if he fails to pay these bills, me-
chanics liens can be filed against the owner and pay-

ment enforced even though the owner had no direct dealing with the labor and materialmen." *Standard Accident Ins Co of Detroit v Rose,* 314 Ky 233, 238; 234 SW2d 728 (1950).

Camelot was not a party to the payment bond. Rather, this contract was negotiated between the principal, general contractor Priestly, and the surety, St. Paul. Upon completing the excavation work in accordance with its labor and materials contract with Priestly, and not being fully paid, Camelot became a third-party creditor beneficiary under the bond. See 1 Restatement Contracts, §§ 133, 139, pp 151-152, 165. The parties agreed:

"No suit or action shall be commenced hereunder by any claimant:

*          *          *

"After the expiration of one (1) year following the date on which principal ceased work on said contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law."

Normally, where no shorter contractual period of limitation exists, the Michigan statute of limitations specifies a six-year period for bringing suits on contract. MCL 600.5807(8), 600.5813; MSA 27A.5807(8), 27A.5813. Plaintiff Camelot asserts that it should not be restricted by a contractual limitation as it was not a party nor did it have actual knowledge of its contents. Camelot urges that the general statute of limitations should apply to its right of action.

No authority exists in Michigan which speaks directly to the question whether legal principles prohibit the enforcement against plaintiff subcon-

tractor of a one-year limitations provision in a labor and materials payment bond negotiated between a general contractor and surety for the primary benefit of third party owner. However, other jurisdictions have addressed this specific question and we find their views persuasive. The rule adopted by most of these jurisdictions allows the contractual limitations provision to control any third-party subcontractor's action, even though the subcontractor was not a party to the bond and was not aware of its contents until after the limitation period had run.

In California, the Court of Appeals reached this conclusion in relation to a bond provision identical to the one considered in the instant case. *Sanders v American Casualty Co of Reading, Pennsylvania,* 269 Cal App 2d 306; 74 Cal Rptr 634 (1969).[3] In *Sanders,* a materials supplier sued on a subcontractor's bond to recover the amount due for materials the subcontractor had furnished the general contractor. It was stipulated by the parties that the subcontractor ceased work on the project involved more than one year prior to plaintiff Sanders' commencement of suit. It was also undisputed that plaintiff first learned of the bond's existence only shortly before action was brought. The question presented to the Court was "whether the one-year limitation contained in a subcontract labor and material payment bond issued on behalf

[3] The limitation provision in *Sanders* reads as follows:

"(3) No suit or action shall be commenced hereunder by any claimant,

"(a) After the expiration of one (1) year following the date on which principal ceased work on said subcontract it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law." *Sanders v American Casualty Co of Reading, Pennsylvania,* 269 Cal App 2d 306, 309 fn 2; 74 Cal Rptr 634 (1969).

of a subcontractor in favor of a prime contractor bars a claim by a materialman who was not a party to the contract and was not aware of its existence or contents until after the one-year period expired". *Id.,* 308.

Except for the relative position of the parties, the case is thus the same as the instant case.[4] In resolving the question presented, the Court in *Sanders* found no controlling significance in the fact that plaintiff had not been a direct party to the contract. The Court found the provision within the boundaries of what was considered a reasonable period of limitation admittedly shorter than the statutory period.[5] Language in the contract

---

[4] One minor difference between the cases was that plaintiff Sanders had lodged various suits against several involved parties prior to the case at bar, one of which appears to have been brought in Federal court within one year of the date the subcontractor ceased work on the project. However, this fact would speak more strongly to granting plaintiff relief in *Sanders* than in the instant case simply because Sanders had demonstrated some degree of diligence in investigating and attempting to pursue his legal remedies against the defendants. See *id.,* 307-308.

[5] Plaintiff Sanders and plaintiff in the instant case rely upon the California decision in *Olds v General Accident Fire & Life Assurance Corp,* 67 Cal App 2d 812; 155 P2d 676 (1945). In *Olds,* defendant insurer issued an automobile liability policy to Helmut Hardt covering an owned vehicle. Hardt subsequently injured third party William Kingston while driving the automobile. Kingston sued Hardt and recovered a substantial judgment. Some time afterward, Kingston died and Hardt fled the country. Plaintiff Olds, as representative of decedent's estate, then brought the present action. However, the action was commenced over one year after the right accrued, and defendant insurer cited as a bar to suit a provision in the policy limiting to one year the right of action.

The District Court of Appeal rejected this argument and affirmed a judgment for plaintiff obtained below. The Court found that the limitation provision could not foreclose plaintiff or the decedent because neither had been parties to the insurance contract. The Court in *Sanders* distinguished this holding on the basis that the language in the *Olds* contract was found crucial to the conclusion reached in that the language clearly limited only actions by the insured, not actions by third parties. Language in both the *Sanders* contract and that involved in the instant case obviously differ and refer to limitation of actions by any claimant.

In addition, the *Olds* Court found an express conflict between the

which specified that "any claimant" would be barred was found sufficient to apply to plaintiff Sanders.

The Court went on to characterize Sanders as a third-party beneficiary and found his rights coterminous with those of the principal:

> " 'There can be no donee beneficiary or creditor beneficiary unless a contract has been formed between a promisor and promisee; and if a contract is conditional, voidable, or unenforceable at the time of its formation, * * * the right of a donee beneficiary or creditor beneficiary under the contract is subject to the same limitation.' (Restatement, Contracts, § 140, pp 165-166)." *Id.,* 309.

Any rights Sanders had under the contract were thus found to be limited by the conditions of the contract itself. See also *Bogart v George K Porter Co,* 193 Cal 197; 223 P 959 (1924). Plaintiff's unawareness of the contract could not be interposed to circumvent the provision where a reasonable time was provided under the contract to investigate the kinds of claims which would normally arise in such circumstances.

We find no credible grounds upon which to distinguish the instant case from *Sanders.* The relative contractual relationship of the parties was

private limitations period and the statutory provision. We face no such conflict in the present case. See text, *infra.*

We also find several other grounds to distinguish the *Olds* case. The contract there was a personal injury liability insurance policy. Strong interests exist to protect parties in actions to recover such personal injury claims, and the equitable merits of allowing recovery by innocent third-party victims there speak persuasively against permitting possible technical forfeitures.

We would also highlight the status and relationship of the parties in the instant matter. We deal here not with an innocent third-party automobile accident victim, but with a building subcontractor involved in a commercial venture. Furthermore, we are involved with a commercial tradesman whom the state has provided with a primary statutory remedy to insure recovery for lost labor and materials. See MCL 570.5; MSA 26.285.

the same; the claim of recovery was the same; the limitation provision was identical and the existing principle of allowing reasonable periods of limitation was present. See *Rechtsteiner v National Surety Co of New York,* 44 Cal App 774; 187 P 34 (1919). See also *The Tom Thomas Organization, Inc v Reliance Ins Co, supra,* 592.[6]

In Massachusetts, we find another essentially identical decision. *General Electric Co v Lexington Contracting Corp,* 363 Mass 122; 292 NE2d 874 (1973).[7] In this case, plaintiff sued on a surety bond

---

[6] In *Tom Thomas,* the Court dealt with a distinct set of facts and legal problem. Plaintiff Thomas sued to recover damages resulting from the loss of films and tapes insured by defendant Reliance. The policy issued by Reliance contained a provision requiring commencement of action within one year of the discovery of the loss. In fact, loss occurred on December 14, 1971. Plaintiff brought suit on March 16, 1973. However, plaintiff reported the loss to Reliance on January 20, 1972, and filed proof of loss on March 7, 1972. Defendant eventually denied liability on June 22, 1972. The Court held that the running of the one-year limitation period was tolled from the date plaintiff gave notice of loss until liability was formally denied by Reliance. Under this ruling, plaintiff's suit was timely commenced.

*Thomas* did not involve a third-party beneficiary claim. The party claiming loss was the party who had contracted directly with the insurer. The claim asserted was therefore the primary and exclusive remedy for the loss suffered, a remedy which plaintiff had paid Reliance to insure.

In addition, the error asserted in *Thomas* was not that a one-year limitation period was unreasonable but that the time determined to commence the one-year period was improperly ascertained. Because of the peculiar delays inherent in the claims procedure and the actions of defendant insurer, we found an estoppel which served to toll the running of the limitation period during the time the insurer took to consider plaintiff's claim of loss.

In the instant case, no such question appears in brief or argument and is inapplicable in a situation where defendant St. Paul had no direct dealings with Camelot prior to suit and where suit was not commenced until nearly a year and one half after contractor Priestly ceased work on the construction project. We thus find the specific holding in *Thomas* inapposite to the case at bar.

[7] As in *Sanders, supra,* plaintiff General Electric had commenced suit against defendant New Amsterdam in Federal court well within the year following the date work on the apartment ceased. Again, we find that this fact militates in favor of recovery in the subsequent state action there due to the continued diligence of plaintiff in seeking and pursuing all avenues of possible legal recovery.

executed by defendant New Amsterdam Casualty Co. Lexington was principal on the bond and default judgment had been entered as to its liability on the underlying materials claim. The limitation provision in the bond contract was virtually identical to the one involved in the instant case: "No suit or action shall be commenced hereunder by any claimant * * * [a]fter the expiration of one (1) year following the date on which principal ceased work on * * * [the] contract * * *." *Id.,* 123. It was stipulated by the parties that work on the project for which the bond was executed ceased more than one year prior to suit.

The Massachusetts Supreme Court found the provision enforceable against General Electric. Plaintiff's argument that a longer statutory period prevailed in the face of the private contractual limitation was rejected. The Court held that the private contractual provision applied rather than any state statutory limitation. The one-year limitation controlled.

Little appears to distinguish that case from the present action. The parties were in a similar contractual posture; the basis of recovery on the contract was the same; the limitation provision was identical and the underlying authority allowing reasonable contractual limitation of action was the same.

Plaintiff Camelot contends that in any event public policy should bar contractual limitations by private parties which are shorter than the six-year statutory period of limitations. Generally, the weight of authority in Michigan and elsewhere is against this position. See *The Tom Thomas Organization, Inc v Reliance Ins Co, supra,* 592; *Goosen v Indemnity Ins Co of North America,* 234 F2d 463 (CA 6, 1956); *Comm'r of Ins v Central West Casu-*

*alty Co,* 301 Mich 427; 3 NW2d 830 (1942); *Ladies of the Modern Maccabees v Illinois Surety Co,* 196 Mich 27; 163 NW 7 (1917); *Forest Twp v American Bonding Co of Baltimore,* 187 Mich 657; 154 NW 26 (1915). See also *Cook v Heinbaugh, supra,* 1003-1004; *Lesher v United States Fidelity & Guaranty Co, supra,* 511; *McGarry v Seiz, supra,* 299.

More specific recent decisions have issued in other jurisdictions which serve to further undermine plaintiff's public policy argument. In Georgia, for instance, any argument that public policy prohibits such reasonable contractual limitations as contained in the instant case has been soundly rejected. *Sam Finley, Inc v Interstate Fire Ins Co,* 135 Ga App 14; 217 SE2d 358 (1975). In *Finley,* plaintiff subcontractor sued a contractor seeking recovery of amounts due on its contract. Defendant surety was made a party to the action under the labor and materials bond executed on behalf of the principal. The bond contract contained a limitation that "no suit or action shall be commenced thereunder by any claimant after the expiration of one year following the date on which the principal ceased work on such contract". *Id.,* 15.

In deciding against plaintiff, the Court was explicit that public policy simply did not prohibit such a limitation provision in a private labor and materials payment bond:

"Where a labor and material payment bond is given to the owner in which the general contractor is principal, and an insurance company is surety, which bond provides that no suit or action shall be commenced thereunder by any claimant after the expiration of one year following the date on which the principal ceased work on such contract, such limitation upon the bringing of an action by a beneficiary of the contract is not void on the grounds of public policy." *Id.,* 15.

Consistent with this holding, see *Walton v American Mutual Fire Ins Co of Charleston, South Carolina*, 109 Ga App 348, 349; 136 SE2d 168 (1964); *Aiken v Northwestern Mutual Ins Co,* 106 Ga App 220; 126 SE2d 630 (1962); *General Ins Co of America v Lee Chocolate Co,* 97 Ga App 588; 103 SE2d 632 (1958).

We find no valid reason not to adopt the position taken in *Finley.* The contract in the present case was a private contract. No statutory mandate[8] exists that bonds be provided in private subcontracting situations such as this one to protect labor and materials claims. In fact, there is a remedy provided by statute for persons in plaintiff's position which plaintiff failed to invoke. We refer to the provision for obtaining a mechanics' lien. MCL 570.5; MSA 26.285.

Such remedy was open to plaintiff and was not barred by the limitation provision in the bond. Apparently, however, plaintiff Camelot may not have complied with the notification provision of the mechanics' lien statute and so lost the primary possible avenue of recovery against defendant Priestly. It might be further noted at this point that the mechanics' lien statute contains a limitation on commencing actions to enforce a lien of one year from recordation, which is similar to the contract provision of the private bond. MCL 570.9; MSA 26.289.

Beyond this possibility, we recognize that plain-

---

[8] We note at this point that contractors involved in most governmental construction projects are required to obtain a performance bond. See MCL 129.201 *et seq.;* MSA 5.2321(1) *et seq.* Within the context of such public bonds, the statute provides a one-year limitation period for commencement of actions running from the date on which final payment was made to the principal contractor. MCL 129.209; MSA 5.2321(9). This limitation has been recognized by Michigan courts. *Affiliated Bank of Middleton v American Ins Co,* 77 Mich App 376; 258 NW2d 232 (1977).

tiff is a third-party creditor beneficiary of the bond executed by the principal, contractor Priestly, and the surety, St. Paul, for the benefit of the owner, Village Homes. *Sanders v American Casualty Co of Reading, Pennsylvania, supra,* 310; *Finley v Interstate Fire Ins Co, supra,* 15; *Rumsey Electric Co v University of Delaware,* 334 A2d 226, 229 (Del Super Ct, 1975), *aff'd* 358 A2d 712 (Del, 1976). See 1 Restatement Contracts, §§ 133, 139, pp 151-*152, 165.* However, we are also of the opinion that plaintiff's status as a third-party beneficiary was subject to the stated conditions of the contract, including the provision that limited the time to bring suit to one year from the date the principal ceased work on the project. See 1 Restatement Contracts, § 140, pp 165-166; 4 Corbin on Contracts, § 820, p 278. See also *Votaw Precision Tool Co, Inc v Air Canada,* 60 Cal App 3d 52, 56; 131 Cal Rptr 335 (1976); *Rumsey Electric Co v University of Delaware, supra,* 334 A2d 226, 230.

We find no violation of public policy or basic unfairness in allowing the enforcement of this private contractual period of limitation, even though shorter than the statutory period normally applicable. The period provided was reasonable. Neither do we find a violation of public policy in the fact that the plaintiff failed to discover the contract prior to its limitation. Plaintiff had a year in which to investigate possible bases of recovery. It failed to initiate any action during the period when recovery for its work was possible.

We might feel different had the limitation provision been constructed in such a way that plaintiff could not have reasonably discovered its loss prior to the point at which the limitation period ran. *Cook v Northern Pacific R Co, supra,* 350-351; *Sheard v United States Fidelity & Guaranty Co,*

*supra,* 35. However, in this case, the contract provided one year from the time at which the contractor Priestly ceased work on the project. Certainly, with a reasonable amount of diligence, plaintiff could have discovered the existence of the bond contract and the fact that contractor Priestly had abandoned the work.

A cursory investigation of the facts surrounding the progress of the project or lack thereof and some minimal inquiry of legal remedies could have reasonably protected plaintiff's mechanics' lien or contractual third-party rights. Public policy will not intervene to aid plaintiff in this case.[9] We find the contractual provision enforceable.

### III

Plaintiff Camelot argues that the provision in the bond is ambiguous and thus should be construed against St. Paul. We find no ambiguity. The provision bars any claimant from commencing action:

"After the expiration of one (1) year following the date on which principal ceased work on said contract, it being understood, *however, that if any limitation embodied in this bond is prohibited by any law* controlling the construction hereof such limitation shall be deemed

---

[9] Authority exists to the effect that defendant insurer may be estopped from asserting, or be held to have waived, the time bar as a defense where the plaintiff has been allowed to rely upon some longer time period. See *Burlew v Fidelity & Casualty Co of New York,* 64 F2d 976, 977-978 (CA 6, 1933), *cert den* 290 US 686; 54 S Ct 122; 78 L Ed 591 (1933); *Goosen v Indemnity Ins Co of North America,* 234 F2d 463, 465 (CA 6, 1956); *Reynolds v Detroit Fidelity & Surety Co,* 19 F2d 110, 112-113 (CA 6, 1927).

Under the facts of the instant case, however, nothing appears in the record to indicate any attempt on defendant insurer's part to foster any kind of material reliance by plaintiff Camelot on a period of limitations different than that specified in the bond contract.

to be amended so as to be equal to the minimum period of limitation permitted by such law." (Emphasis added.)

The point of controversy involves the italicized portion of the quoted provision. It is asserted that Michigan's six-year statutory limitation on contract actions fits within the prohibition language specified in the contract clause. MCL 600.5807(8), 600.5813; MSA 27A.5807(8), 27A.5813. Those two provisions state:

, "No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

"(8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract."

"All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

No ground exists to alter the one-year limitation on actions contained in the bond contract unless a state statutory provision *prohibits* the shorter period. The term prohibit has been defined by decisions of this Court:

"Strictly, the word 'prohibit' means *to forbid or* interdict by authority, hinder, debar, prevent." *Timm v Common Council of the Village of Caledonia Station,* 149 Mich 323, 324; 112 NW 942 (1907).

We fail to see any language contained in either

statutory provision for limitation of contract actions which would prohibit a shorter period as to private labor or materials payment bond contracts.

Beyond the possible application of the bond contract language, we can perceive no basis for finding the provision ambiguous. No claims of ambiguity have been raised elsewhere in contracts containing identical terms. See *Sanders v American Casualty Co of Reading, Pennsylvania, supra,* 309, fn 2; *General Electric Co v Lexington Contracting Corp, supra,* 123; *Finley v Interstate Fire Ins Co, supra,* 15.

We have no general policy or statutory enactment in this state which would prohibit private parties from contracting for shorter limitation periods than those specified by general statutes. Some states do and so private contracts for shorter periods are precluded. See, *e.g., Hiram Scott College v Ins Co of North America,* 187 Neb 290; 188 NW2d 688 (1971). However, where no statute expressly prohibiting a shorter contractual period exists, decisions in other jurisdictions have found no construction problem in upholding these provisions. *Rumsey Electric Co v University of Delaware, supra.*

In *Rumsey,* plaintiff electrical equipment supplier sued to recover the cost of materials provided a then-bankrupt subcontractor on the basis of a performance bond executed among the various defendants to a university building project. One clause of the bond contract proscribed any commencement of action after one year after the project's completion.

The Delaware Supreme Court resolved any question of ambiguity by stating that absent any "express statutory provision to the contrary", the

shorter period prevailed. *Id.,* 358 A2d 714.[10] Express prohibitions exist in some states. However, with the absence of such a policy or statute in Michigan, we find no application of the language in the bond contract which would amend the shorter period to the prevailing law and thus no ambiguity in the contract clause.

We thus reject plaintiff's assertion and affirm the enforcement of the bond contract bar to suit.

# IV

The bond contract upon which plaintiff relies in its suit against defendant St. Paul does not unreasonably limit the time in which plaintiff subcontractor, as third-party beneficiary, may commence legal action. As a third-party beneficiary, plaintiff is limited to reasonable conditions specified by the contract where those conditions reasonably require compliance. We find no violation of public policy and thus affirm enforcement of the limitation provision on the facts existing in this case. We further discern no ambiguity in the language of this provision and therefore perceive no basis to construe its limitation provision against defendant surety. The judgment of the Court of Appeals is affirmed.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

LEVIN, J. *(concurring).* I have signed the opinion of the Court, but write separately to emphasize the narrowness of the holding and to express my

---

[10] See also *Wesselman v Travelers Indemnity Co,* 345 A2d 423, 424 (Del, 1975); *Ottendorfer v Aetna Ins Co,* 231 A2d 263 (Del, 1967); *Murray v Lititz Mutual Ins Co,* 44 Del (5 Terry) 447; 61 A2d 409 (1948).

concern about the development of a rule authoriz-
ing contractually shortened periods of limitation.[1]

We deal here with one specific form of insurance
contract—a labor and materials payment bond—
and a type of third-party beneficiary unique to
such contracts. I do not understand the Court's
opinion as authorizing contractually shortened pe-
riods of limitation in other insurance contracts or
against other types of third-party beneficiaries.

The rationale of the rule allowing parties to
contractually shorten statutory periods of limita-
tion is that the shortened period is a bargained-for
term of the contract. Allowing such bargained-for
terms may in some cases be a useful and proper
means of allowing parties to structure their busi-
ness dealings.

In the case of an adhesion contract, however,
where the party ostensibly agreeing to the short-
ened period has no real alternative, this rationale
is inapplicable. The rationale may similarly be
inapposite as to the typical third-party beneficiary
who neither participates in the bargaining process
nor receives actual notice of the shortened period.
In such situations, the public policy expressed in
the statutes of limitation should presumptively
control.

Without this bargained-for element, what has
occurred in practical terms is that one of the
contracting parties has supplanted the period of
limitation mandated by the Legislature. I question
whether the public policy embodied in a statutory
limitation period is subject to unilateral preemp-
tion.

Three factors serve to distinguish this case.
First, Camelot is not a typical third-party benefi-

---

[1] See cases collected in Anno: *Validity of contractual time period,
shorter than statute of limitations, for bringing action,* 6 ALR3d 1197.

ciary. Subcontractors such as Camelot are made beneficiaries as a means of better protecting the owner; the purpose is not to benefit subcontractors.

Second, the period here has been shortened to match the actual risk sought to be covered. The bond is designed to protect the owner from mechanics' liens filed by unpaid subcontractors and materialmen. The contractually limited period has been tailored to cover only the period during which such liens may be filed and enforced under state statutes.[2] The shortened period thus limits the bond to the coverage actually needed by the owner, the primary beneficiary. Such congruence between the shortened period and the risk to be covered by the insurance policy would not be present if a comparable term were included in typical homeowners, auto or life insurance contracts.

Third, at least as to this type of insurance contract, the Legislature has indicated that the one-year period may be reasonable by so limiting the time for bringing actions on statutorily required labor and materials payment bonds covering public construction.[3] Also, the congruence between the shortened period and the risk being covered would support the reasonableness of this shortened period.

These factors, unique to labor and materials payment bonds and to such an ancillary third-party beneficiary, distinguish this case from situations involving other insurance contracts. An adhesion contract—such as most contracts of insurance—in which the shortened period has not actu-

---

[2] MCL 570.1 et seq.; MSA 26.281 et seq.

[3] MCL 129.209; MSA 5.2321(9). See also, as to construction and maintenance contracts of the Department of Transportation, MCL 570.104; MSA 26.324; restricted by MCL 129.211; MSA 5.2321(11).

ally been bargained for, or which operates to defeat the claim of an intended beneficiary not involved in the bargaining process, will present a different case.