[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5314
This action arises out of the sale and delivery of a recreational balloon to the defendant by virtue of a contract entered into on or about May 3, 1993. The purchase agreement is in a form prepared by Thunder Colt, Airborne of America, Inc. setting forth the specifics of the transaction. The total purchase price of the device, with all of its specified equipment, is in the amount of fifty five thousand eight hundred and one dollars ($55,801). Deducted from the purchase price is a credit of $18,801 by virtue of a credit in compromise of warrantee claims asserted by the defendant against the plaintiff because of a claim of the defendant for breach of warrantee from a prior transaction.
The offset against the purchase price set the adjusted price for this new balloon at $37,000. The deposit of $12,950 was paid on this new transaction, resulting in a balance due of $24,050. It is this amount for which this action is brought. The balloon is and its components were delivered to the defendant and is retained by the defendant.
 I.
The named plaintiff in this suit is T C Balloons U.S., Inc., P.O. Box 122 Canowindra, New South Wales, Australia. The defendant takes the position that because the purchase agreement was with "Thunder Colt Airborne of America, Inc." therefore the named plaintiff, who alleges in paragraph 2 of the complaint that it is the "successor in interest to Thunder Colt Airborne of America, Inc.", is not a proper party to bring this action.
The correspondence between the individuals clearly indicates that throughout the course of these dealings the defendant dealt exclusively with one Paul Gauthier and Paul Dickenson representing the seller-manufacturer. No factual issues are raised as to any confusion caused to the defendant as to the enterprise with which he was dealing, nor is there any suggestion that the defendant is in any fashion harmed by the action by a successor in interest to the former corporation which had a different corporate name. It appears clear that the plaintiff as successor in interest to the former named corporation, is in fact the real party in interest in this litigation. Practice Book Section 104 provides "An action may be brought in all cases in the name of the real party in interest, but any claim or defense CT Page 5315 may be set up which would have been available had the plaintiff sued in the name of the nominal party in interest". See alsoWilkinsen v. Boats Limited, 236 Conn. 78, 88 (1996), sanctioning actions brought by the real party in interest, subject however to defenses which would have been available as against nominal party.
The court determines that the plaintiff T C Balloons U.S., Inc. is the real party in interest and is the proper party to bring this action.
 II.
The plaintiff brings this action in three counts. The first count is in breach of contract. The second is a claim for the reasonable value of the services rendered. The third count is a claim based upon unjust enrichment.
As to the first count, breach of contract, the defendant pleads, by way of special defense that "the plaintiff cannot recover on this account as its contract has a statute limitation of one year and this action has been brought more than one year after the alleged breach".
The evidence clearly demonstrates that the balloon was delivered on July 15, 1993. The contract provides that the payment of the balance owed was required to be made "within 14 days of notification". Notification means "Purchaser will be notified when the equipment is ready for shipment". Hence the date for payment would be no later than 14 days from the date of actual receipt of the goods, that is no later than July 29, 1993. The action was commenced by service of process on December 3, 1995. The action was commenced some twenty eight months after the date of the claimed breach, far beyond the one year limitation set forth in the contract.
The briefs submitted by the parties agree that the law of Michigan, which is set forth in the contract as the controlling law for the contract, applies to this case. The defendant claims that the law of the State of Connecticut should apply. The plaintiff concedes that the law of the state of Michigan should apply, but that it is no different than Connecticut law. The defendant claims that even if Michigan law were to apply, periods shorter than the general statute of limitations have been held to be enforceable. Aldalili v. Underwriter Lloyds of London,
CT Page 5316174 Mich. App. 395, 435 (1989); Camelot Excavating Co., Inc. v. St.Paul Fire and Marine Insurance Company, 410 Mich. 118 (1981).
This court determines that Michigan law and under Connecticut law provisions in a contract which provisions are clear and unambiguous, limiting the time in which an action may be brought, are enforceable. See Boyce v. Allstate Insurance, 236 Conn. 375
(1996); McGlinchy v. Aetna Casualty Surety Co., 224 Conn. 133,139 (1992); Hotkowski v. Aetna Life Casualty Co.,224 Conn. 145, 147 (1992).
Although a great deal of litigation has transpired concerning this subject, particularly as concerns insurance claims, and even though courts have been prepared to entertain defenses on the grounds of waiver, estoppel and the like, Connecticut appeals courts have not diverted from the rule of law that such provisions are not prima facia unenforceable. No claims of waiver or estoppel are herein asserted. It is to be further noted that the plaintiff, not the defendant, set forth this condition in its prepared form, and cannot now be heard to disavow its intent and efficacy as pertains to its claims for breach of contract. Hence, by the terms of the contract, the cause of action for common law breach of contract is time barred by the very provisions of the contract.
 III.
If this were to be the end of the matter the defendant would have in his possession, free and clear, an exotic piece of equipment worth almost $55,801, for which he would have paid the totally inadequate sum of $31,751, including the $18,801 offset and the $12,290 deposit.
The second count of the complaint is in equity seeking the reasonable value of the materials and equipment. The court accepts the opinion of both of the parties, as set forth in the contract, that the value of the goods and equipment would be $55,801.
"The plaintiff was entitled to recover for work it had substantially performed under its contract. Where a contractor is allowed recovery for the value of services rendered such recovery is allowed, not upon the original contract, for that has been breached, but on quasi contract upon the theory that if such recovery were not allowed the other party would be unjustly CT Page 5317 enriched at the expense of the contractor. Simonetti v. Lovermi,15 Conn. App. 722, 725 (1988). These same equitable principles would apply whether the failure to pay was by virtue of a partial breach of contract, or by virtue of the contractor's inability to enforce the contract because of a time limitation for commencing suit on the contract.
The court accepts the evidence to the effect that the value of the performance, if fully performed, would be $55,801, set off by $18,801 as agreed to by the parties, less the $12,950 paid for the initial deposit, which would have left a balance of $24,050. Both of the parties, plaintiff and defendant, have substantial expertise in the value of these objects, this equipment, and there is no reason to question their respective valuations as to the fair value of this equipment.
 IV.
The defendant pleads, by way of second special defense to the contract, and to the claim for "reasonable value" (2nd count), that the plaintiff failed to deliver the goods in a timely manner. The court finds that the agreement called for the goods to be delivered on July 24, 1993. (See proposal, Exhibit 1) The goods were delivered on July 15, 1993. Hence, the defendant cannot prevail on his claim of late delivery.
 V.
The defendant claims, by way of "set off and recoupment" that the basket was of incorrect size, and that it was defectively built, and was not certified. He further claims that the burner system was not built to specifications and was not certified. He further claims that the balloon (meaning apparently the entire system) was "delivered uncertified and therefore could not be used".
"Certification" refers to certification from the Federal Aviation Administration. Certification is required to enable the balloon to be used to carry passengers. However, the agreement of the parties does not require that the plaintiff obtain such a certification for the defendant. See exhibit 2 and exhibit 1. The letter of the defendant to the plaintiff, dated July 15, 1993 (exhibit 10) states "The one I received is not and I am unwilling to incur expenses relating to obtaining certification". The court concludes that the defendant could have taken the step necessary, CT Page 5318 if he so chose, to have the balloon certified. Any documentation could have been demanded of the plaintiff, upon payment of the purchase price, which was required of him within 14 days of the notification that the balloon was ready for shipment, per paragraph 4 of the agreement. At the very latest that balance would have been due within 14 days of actual receipt of the balloon. The court determines that the claim of the defendant that the balloon "was delivered without FAA certification" is without merit and does not support the 1, counterclaim of the defendant.
The defendant claims that the basket was defective in that it was of improper weave and had gaps in the wicker, caused in part by the wicker drying out. None of the defendant's correspondence with the plaintiff alludes to a problem of this nature with the basket. This is a matter of some concern to the court, nevertheless, as it may implicate the safety of the device and hence could be potential hazard as concerns its use by members of the public.
As to the burners, the defendant claims that the bolts did not have holes to contain a stop type insert such as to prevent the disengagement of the bolts. This appears to be a minor problem, easily rectified. Further, that hoses were rubbing. Again, a minor problem, easily rectified.
As to the claim for lost profits, the court finds that the defendant has not established that claim by a fair preponderance of the evidence. Although the basket may have developed problems' as time passed, the defendant's letter of July 15, 1993 does not identify such problems at that time. The court concludes that the failure of the defendant to earn income was caused by the defendant's failure to tender the purchase price, less appropriate retainage for minor repairs.
The court further finds that the complaint of the defendant during 1993 was not that the basket was defective, but rather that he would apparently have preferred to negotiate for a larger basket, 59" X 102" in dimension, rather than the 60" X 89" smaller basket which he had ordered. See defendant's exhibit H; defendant's exhibit I (basket dimensions); plaintiff's exhibit 1; plaintiff's exhibit 2. The larger basket would of course, be more expensive than that contracted for. Nonetheless, the basket having developed problems as aforesaid, it should, in equity, be replaced. CT Page 5319
The court finds that the plaintiff has prevailed on count two of the complaint, and is entitled to the reasonable value of the materials furnished. The court accepts the valuation thereof by the parties as set forth in the agreement. The court further accepts the calculation of the parties to the effect that from the value thereof, $55,801, there is to be deducted the warrantee claim for a prior transaction, $18,801, and that $12,950 has been paid as a deposit, leaving an amount required to be paid of $24,050.
As to the counterclaim, the court determines that the weave of the basket is now found to be inadequate and is not presently in such condition as can be relied upon to be reasonably and safely used for its intended purposes. As to the remaining claims, the bolts and the potential rubbing of the bases, the court is satisfied that such claims have been proven by the defendant, but that such claims are de minimus, but should however be rectified by or at the expense of the plaintiff.
The court orders that the defendant pay to the plaintiff the sum of $24,050.
The court further orders that the basket be returned to the plaintiff, shipping costs to be paid by the plaintiff, and that the basket be replaced by a basket identical in size (69" X 89") and of such construction as to meet FAA standards. Shipping costs of the replacement basket shall be paid by the plaintiff. The plaintiff shall furnish to the defendant all documentation necessary for the defendant to obtain necessary FAA approval for the balloon system at the time of delivery of the replacement basket. The court further orders that the drilling of the bolts be accomplished by the plaintiff, and that the rubbing problem with the propane hoses be rectified by the plaintiff.
The court further orders that the sum necessary to cover the cost of the substitute basket, at the plaintiff's current sales price as reflected by the plaintiff's current listing of prices for such basket, shall be mathematically deducted from the $24,050 and immediately placed in escrow with the defendant's attorney, to be remitted to the plaintiff upon receipt by the defendant of the substitute basket. The balance of the judgment (i.e. less the escrow) shall be transmitted to the plaintiff immediately, together with immediate notification by plaintiff's attorney that said attorney has deposited the actual sum for the CT Page 5320 substitute basket in his escrow account.
The court further determines that the conduct of the plaintiff, (the counterclaim defendant) was and is not a violation of Connecticut Unfair Trade Practices Act, General Statutes Section 42-110, et seq.
L. Paul Sullivan, J.